[Nos. 48379-5, 48492-9. En Banc. November 10, 1982.]

THE CITY OF SEATTLE, *Respondent,* v. CHARLES F. HESLER, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. KEVIN LAJINESS, *Appellant.*

74

*Mark Leemon* of *Seattle–King County Public Defender Association,* for petitioner.

*Kim S. Wakefield* of *Washington Appellate Defender Association,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Rodney Eng, Marilyn Sherron,* and *Michael Monroe, Assistants,* for respondent City of Seattle.

*Norm Maleng, Prosecuting Attorney,* and *Douglas B. Whalley, Senior Deputy,* for respondent State.

ROSELLINI, J.—In municipal court, the petitioner Hesler was charged with assault. The offense was committed in 1980 but the complaint was not filed until 1981, after the effective date of the new Rules for Appeal of Decisions of Courts of Limited Jurisdiction. He appealed to the superior court and noted the case for trial, but the court, on motion of the City, ordered that the appeal be heard on the record rather than de novo. We granted discretionary review.

On December 10, 1980, the appellant Lajiness was involved in an incident which gave rise to malicious mischief and simple assault charges. One of these charges was filed after January 1, 1981, and he was refused a trial de novo when he appealed his conviction to superior court. The proceedings will be described in more detail later in this opinion.

Both of these parties contend here that they were entitled to a trial de novo, with a jury of 12.

Prior to the adoption of the new RALJ, the method of review on appeal from courts of limited jurisdiction was governed generally by statute. *See* RCW 3.50.370, .380, .410; RCW 35.20.040, .070 (municipal courts); RCW 35.22-.530–.560 (police courts, first class cities); RCW 35.23.600 (police courts, second class cities); RCW 35.24.470 (police courts, third class cities); RCW 35.27.540 (police justice, towns); RCW 35A.20.040 (police judge, code cities). Under the statutes, review was by trial de novo or by writ of review. By statute, appeals from a court's determination in a traffic infraction case are taken pursuant to RCW 46.63-.090(5).

The method of review on appeals from justice court, pursuant to RCW 10.10, was not defined in that statute but rather was governed by JCrR 6.01–.03, as promulgated in 1969. That rule contemplated that there would be a new trial in superior court.

In 1980, the Legislature enacted RCW 3.02 providing for review of proceedings in courts of limited jurisdiction. Pertinent sections read:

3.02.010 Court of limited jurisdiction defined. For purposes of this chapter, a court of limited jurisdiction is any court organized under Titles 3, 35, or 35A RCW.

3.02.020 Review of proceedings. Review of the proceedings in a court of limited jurisdiction shall be by the superior court, the procedure for which may be established by supreme court rule.

3.02.030 Record of proceedings. The supreme court may, by court rule, establish a method of making a record of the proceedings of a court of limited jurisdiction for purposes of review.

3.02.040 Electronic recording equipment. The administrator for the courts shall supervise the selection, installation, and operation of any electronic recording equipment in courts of limited jurisdiction.

3.02.050 Rules for discovery in civil cases. By January 1, 1982, the supreme court shall adopt rules providing for discovery in civil cases in the courts of limited jurisdiction.

Pursuant to the authority granted in RCW 3.02.020, this

court promulgated the RALJ. They apply to all appeals from courts of limited jurisdiction, with stated exceptions, and they substitute a review upon the record for what had previously been a trial de novo.

The constitutionality of the RALJ is attacked on several grounds.

The first theory is that the method of review of inferior court proceedings is fixed by the constitution. We are shown no provision upon which to rest such a holding. Const. art. 4, § 6 provides that superior courts shall have "such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law."

■■ It is argued that the Legislature has, by statute, fixed the appellate "jurisdiction" of the superior courts when it has provided for trials de novo on appeal. No case cited has said that review procedures are jurisdictional. Jurisdiction is the power to hear and determine a cause. *Tucker v. Brown,* 20 Wn.2d 740, 150 P.2d 604 (1944); *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P.2d 397 (1936). "Procedure" is defined as the mode of proceeding by which a legal right is enforced, as distinguished from the right itself—in other words, the machinery, as distinguished from the product, of the law. Black's Law Dictionary 1367–68 (4th rev. ed. 1968). In brief, the substantive law determining rights and liabilities is given effect by the court having jurisdiction, employing the rules of procedure for that purpose.

In *State ex rel. Lytle v. Superior Court,* 54 Wash. 378, 103 P. 464 (1909), it was held that the Legislature may not diminish the jurisdiction of the superior court. There, this court held unconstitutional a statute which provided for the division of a county into judicial districts, each having a superior court whose jurisdiction did not extend beyond its territorial limits. This act was found to be contrary to Const. art. 4, § 5, which provides that there shall be a superior court in each county and Const. art. 11, § 3, which provides that no new county shall be formed having less

than 2,000 inhabitants. There is no constitutional provision prescribing the procedures on appeal from courts of limited jurisdiction.

It is urged that the Legislature cannot delegate to the Supreme Court the power to prescribe the method and procedure for review in the superior courts.

Here again, the citations fail to sustain this contention. None of them holds that the Legislature may not delegate to the court the authority to prescribe appellate procedures. Nor is there before us authority to support the notion that for the court to designate such procedures invades the Legislature's authority to define the "jurisdiction, duties and powers" of inferior courts.

In *In re Cloherty*, 2 Wash. 137, 27 P. 1064 (1891), we held that a police court cannot be established by municipal charter. The question in *Young v. Konz*, 91 Wn.2d 532, 588 P.2d 1360 (1979) was whether a defendant was denied due process and equal protection of the laws when his misdemeanor charge was heard before a nonlawyer judge, as provided in RCW 3.34.060. We held that the constitution bestows upon the Legislature the authority to determine the qualifications of judges, and that the constitutional objections were met by the availability of a trial de novo in superior court on appeal. Neither case deals with the questions raised here. Nor do we find in our cases support for the proposition that the jurisdiction of the superior court on appeal from an inferior court is limited to a trial de novo. In *State v. Miller*, 59 Wn.2d 27, 29, 365 P.2d 612 (1961), we said that when the jurisdiction of the superior court is invoked by an appeal from a conviction in justice court,

> the superior court does not review the action of the justice court because it is not a court of record.[1] Such an

---

[1]The expression "court of record", as used in this context, appears to refer to the fact that the lower court did not keep a record of its proceedings, inasmuch as the lack of a record made it impossible to review the trial in the inferior court. *See also State v. Young*, 83 Wn.2d 937, 523 P.2d 934 (1974). As we point out in *Seattle v. Filson*, 98 Wn.2d 66, 653 P.2d 608 (1982), the term "court of record" is

appeal invokes a trial *de novo*.

In *State v. Buckman*, 51 Wn.2d 827, 322 P.2d 881 (1958), we held that the justice court and the superior court had concurrent jurisdiction of the offenses involved in that case. *State v. Bringgold*, 40 Wash. 12, 82 P. 132 (1905) is to the same effect. And in *Seattle v. Buerkman*, 67 Wn.2d 537, 408 P.2d 258 (1965), it was said that when the appellate jurisdiction of the superior court is invoked, the cause must be tried de novo, without reference to irregularities which may have occurred in the lower court proceedings.

When these cases were decided, the applicable statutes and court rules provided for a trial de novo on appeal, and the import of these holdings was simply to give them their intended effect. The questions whether the Legislature may delegate the authority to prescribe procedures, or whether procedures are "jurisdictional" were not involved.

To be sure, prescribing rules of procedure affects the manner in which the appellate jurisdiction of the court will be exercised, but it does not alter its scope. The function of the superior court under RALJ is more precisely "appellate" in nature than was the trial de novo, and is thus more in conformity with the role of the court as provided in Const. art. 4, § 6.

It is argued that because their decisions are no longer reviewed de novo, but on the record, the powers of the inferior courts have been increased. It is true that, now, more credence is given to a justice court decision. At the same time greater safeguards have been provided to ensure the integrity of the lower court trial.[2] While the new rules

---

not one which has the same meaning in every context.

[2]This court said in *State v. Young*, 83 Wn.2d 937, 523 P.2d 934 (1974) that a trial de novo was provided because no record was kept of the justice court proceedings. The City asserts in its brief that the court was in error in so stating— that the actual reason there has always, heretofore, been a trial de novo is that historically the inferior courts were considered too unreliable, there being a lack of any effective control over them, and most justices of the peace being untrained in the law. Under the present law, all persons trying cases subject to review on the record must be lawyers. *See* RALJ 1.1(a).

give greater dignity to the decisions of the inferior court judges, their jurisdiction remains unchanged.

RCW 2.04.190 (Laws of 1925, 1st Ex. Sess., ch. 118, § 1) declares that the Supreme Court shall have the power to prescribe, from time to time, the forms of writs and other process, the mode and manner of framing and filing proceedings and pleadings

> and generally to regulate and prescribe by rule the forms for and the kind and character of the entire pleading, practice and procedure to be used in all suits, actions, appeals and proceedings of whatever nature by the supreme court, superior courts and justices of the peace of the state.

█ This statute, in itself, is broad enough to authorize the changes made here. Its constitutionality was upheld in *State ex rel. Foster–Wyman Lumber Co. v. Superior Court,* 148 Wash. 1, 267 P. 770 (1928) and *State v. Pavelich,* 153 Wash. 379, 279 P. 1102 (1929) against contentions that it constituted an unlawful delegation of legislative power. These courts have operated under that statute for over half a century, and furthermore have determined that the court's rulemaking power not only is derived from the statute but is a necessary adjunct of the judicial function. Its inherent power to govern court procedures stems from Const. art. 4, § 1, vesting the judicial power in the Supreme Court and other courts designated in the constitution. *State v. Fields,* 85 Wn.2d 126, 530 P.2d 284 (1975); *State v. Smith,* 84 Wn.2d 498, 527 P.2d 674 (1974).

We find here no unlawful delegation of legislative power.

It is next suggested that the Legislature did not authorize the Supreme Court to take the actions which it did in adopting the RALJ. While the clear language of RCW 3.02 cannot be disputed, the contention here is that the act passed by the Legislature does no more than authorize the court to make procedural rules governing review by trial de novo, and/or writ of review under RCW 35.20.030, .070. The petitioner and appellant point to the fact that the Legislature did not repeal these provisions when it enacted RCW

3.02, and insist that it thereby manifested an intent that they should continue to govern such appeals.

■ The failure to repeal or amend these statutes can be attributed to the fact that the Legislature, by enacting RCW 3.02, made no change in the rules governing appeals, but left that for this court to do at its discretion. To have repealed the existing statutes would have left a hiatus in the law until such time as this court adopted substitute rules, and to have amended the statutes would have been to anticipate the changes which the court would promulgate. Furthermore, under the RALJ some appeals are still governed by these statutes, and they continue to serve a function. Thus a repeal of these statutes would be inappropriate, and their retention manifests no legislative rejection of the RALJ.

As the City points out, while there is no express authorization to eliminate or restrict trials de novo in superior court, the whole import of RCW 3.02 is to give the Supreme Court authority to change the method of review, and to implement that change. If the provisions relating to electronic equipment for recording the proceedings of a court of limited jurisdiction "for purposes of review" do not contemplate that the court will make rules providing for review on the record, they are meaningless. We find nothing equivocal in the authority conferred on the court.

■ It is also argued that this court does not have authority to alter the "appellate jurisdiction" of the Court of Appeals, and that it did so by adopting RAP 2.2(c) and RAP 2.3(d). Those sections have eliminated the right of appeal from the superior court decision and substituted discretionary review where the review in that court was upon the record.

Appellate jurisdiction is defined in Black's Law Dictionary 126 (4th rev. ed. 1968) as

> The power and authority to take cognizance of a cause and proceed to its determination, not in its initial stages, but only after it has been finally decided by an inferior court, *i. e.,* the power of review and determination on

appeal, writ of error, certiorari, or other similar process.

While they have revised the procedures through which the jurisdiction of the appellate courts is exercised, neither RCW 3.02 nor the RALJ has altered the power of any court to hear and determine the causes within its jurisdiction.

■■ It is next argued that the RALJ, as applied to a person whose offense was committed before the rules took effect, violate the provisions of the state and federal constitutions forbidding ex post facto laws. *Kring v. Missouri,* 107 U.S. 221, 27 L. Ed. 506, 2 S. Ct. 443 (1882) is cited. The Supreme Court there was asked to determine the constitutionality of a change in state law which abrogated a statute providing that a conviction of second degree murder operated as a conclusive acquittal of first degree murder. Having successfully appealed his conviction of second degree murder and obtained a new trial, the defendant was convicted on the second trial of first degree murder.

The Court noted that in *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798) four classes of laws had been recognized as offensive to the ex post facto clause: a law which makes an act punishable which was innocent when done, or one which aggravates the crime after it was committed, or one which increases the punishment, or one which alters the quantity or kind of evidence necessary for conviction. The Court in *Kring* said that this list was not exclusive. Finding that the change in law deprived the defendant of a "substantial right", the Court said that such a right, if it relates to guilt, cannot be taken away.

In *Thompson v. Utah,* 170 U.S. 343, 351, 42 L. Ed. 1061, 18 S. Ct. 620 (1898), the Court said that the decision in *Kring* proceeded upon the ground that the state constitution deprived the accused of a substantial right which the law gave him when the offense was committed and, therefore, "'in its [application] to the offence, or its consequences, alter[ed] the situation of the accused to his disadvantage.'"

In *Kring,* the change in law related to the defendant's

offense (murder), whereas here, the change does not relate to any particular offense but involves general procedural law governing all criminal appeals from decisions of the courts affected by it. Furthermore, the change of law in *Kring* deprived the defendant of a shield against a second prosecution for the more serious crime. There is no comparable loss here.

Much reliance is placed upon the case of *Thompson v. Utah, supra.* The Court held that the defendant in that case, charged with a felony, had a *constitutional right* to be tried by a jury of 12 at the time his offense was committed. When the territory became a state, the constitution which it adopted provided only for a jury of eight. The Supreme Court said that the defendant was entitled to be tried by a jury of 12.[3]

Here the defendant was charged with a misdemeanor. His only constitutional right was to be tried by a jury, the Legislature having discretion to provide for a jury of fewer than 12 members. Const. art. 1, § 21; *Pasco v. Mace,* 98 Wn.2d 87, 653 P.2d 618 (1982). He had no constitutional right to a trial de novo on appeal. *Seattle v. Filson,* 98 Wn.2d 66, 653 P.2d 608 (1982). Nothing in *Thompson* suggests that a change in the method of review on appeal offends the ex post facto clauses.

While there are a few cases, such as *Thompson,* where procedural changes have been held to affect substantial rights of a defendant, it is well established as the general rule that prohibitions against ex post facto laws have no application to changes which relate exclusively to a remedy or mode of procedure. *Beazell v. Ohio,* 269 U.S. 167, 70 L. Ed. 216, 46 S. Ct. 68 (1925); *Duncan v. Missouri,* 152 U.S. 377, 38 L. Ed. 485, 14 S. Ct. 570 (1894); *Kring v. Missouri,* 107 U.S. 221, 27 L. Ed. 506, 2 S. Ct. 443 (1882).

A person has no vested right in any particular remedy

---

[3]The decision in *Thompson v. Utah, supra,* has been weakened by *Williams v. Florida,* 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970), where it was held that the United States Constitution does not require a 12–man jury.

and cannot insist on the application to the trial of his case, whether civil or criminal, of any other than the existing rules of procedure. *Thompson v. Utah, supra,* disapproved on other grounds in *Williams v. Florida,* 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970).

The Supreme Court said in *Thompson,* at page 352:

The difficulty is not so much as to the soundness of the general rule that an accused has no vested right in particular modes of procedure, as in determining whether particular statutes by their operation take from an accused any right that was regarded, at the time of the adoption of the Constitution, as vital for the protection of life and liberty, and which he enjoyed at the time of the commission of the offence charged against him.

It appears that a trial de novo on appeal from an inferior court judgment was provided for by statute at the time our constitution was adopted (*see* Code of 1881, §§ 1898–1900; *cf.* §§ 1858, 1863), but such a proceeding is not mentioned in the constitution, and there is nothing to indicate that it was statutorily provided for any reason other than (1) the impracticality of reviewing the lower court decision on the record, due to the manner in which proceedings in those courts were conducted, and/or (2) a lack of respect for those proceedings growing out of the fact that justices of the peace were not required to have legal training. While the right to a trial de novo was a valuable right so long as those conditions prevailed, it was no longer needed when they were corrected.

We are not shown and do not perceive that the changes effected here will be detrimental to the legitimate interests of these or any other defendants. They are designed to facilitate and enhance the administration of justice, not to hinder it.

Statutes changing the law with respect to the availability of or procedure for obtaining judicial review of a lower court decision have been upheld whenever questioned in the United States Supreme Court. *See Mallett v. North Carolina,* 181 U.S. 589, 45 L. Ed. 1015, 21 S. Ct. 730 (1901);

*Duncan v. Missouri, supra; Calder v. Bull, supra.*

In *Duncan,* where an amendment to the state constitution increased the 5–judge Supreme Court to seven judges and divided the court into two divisions with four and three judges respectively, and the defendant's appeal was heard by the division having three judges, the statute was upheld against ex post facto objections. The Court observed that the abolition of courts and the creation of new ones, leaving untouched all of the substantial protections which the existing law provides to a person accused of a crime, cannot be considered to fall within the definition of an ex post facto law for purposes of U.S. Const. art. 1, § 10.

We conclude that the changes effected by RCW 3.02 and the RALJ affecting the method of review on appeal from a court of limited jurisdiction do not deprive a defendant of any substantial right provided under the previous law and are not ex post facto.

Having treated those questions which were argued in both of these consolidated cases, we turn to the remaining contention of the appellant Lajiness.

On December 26, 1980, Lajiness was charged in Shoreline District Court with malicious mischief. He pleaded guilty to that charge on February 17, 1981, and was sentenced. In the meantime, on January 26, 1981, a separate complaint was filed, charging him with one count of simple assault and one count of malicious mischief. On March 19, 1981, the latter complaint was tried, Lajiness stipulating to the facts of the simple assault charge. On motion of the State, the malicious mischief count was dismissed.

On appeal to the superior court, Lajiness demanded a trial de novo, which was denied. He contends here that the second complaint should have been consolidated with the first complaint, and should relate back to that complaint so as to be regarded as having been filed on December 26, 1980, rather than January 26, 1981. The effect of this ingenuous theory would be to accord the appellant a trial de novo on appeal, as provided in RCW 35.20.070, which was superseded by the RALJ, effective January 1, 1981.

■ JCrR 2.06(a) declares that if two or more complaints are filed against the same defendant for the same offense, the court shall order the complaints to be consolidated. The appellant assumes this provision to be mandatory. There was no order of consolidation entered in this case, and apparently no motion to consolidate. Under the appellant's theory, nevertheless, the two complaints should be treated as though they had been consolidated in fact. Even so, the basis for his theory is not established. The fact that two cases are consolidated for trial does not alter the commencement dates of the cases, and it is this date which determines whether an appeal is governed by statute or by the RALJ. *See* Laws of 1980, ch. 162, § 13, p. 519; RALJ, 94 Wn.2d 1136 (1981).

To supply this missing element in the development of his theory, Lajiness turns to the rules for civil proceedings. He cites CR 15(c) and JCR 15(c), both of which provide that whenever a claim or defense asserted in an amended pleading arose out of the same transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. No authority is cited for the proposition that these civil rules apply to the consolidation of cases in criminal court. We are shown no policy considerations which would dictate that such a rule should apply in criminal proceedings. As applied in civil cases, the "relation back doctrine" protects a party from what would otherwise be the bar of the statute of limitations, in order to foster the determination of controversies on the merits rather than on procedural niceties. *See DeSantis v. Angelo Merlino & Sons, Inc.,* 71 Wn.2d 222, 427 P.2d 728 (1967). There is no comparable policy favoring the State's interests in a criminal case. There, the concern of the law is for the protection of the defendant—not the complainant.

The consolidation of two charges does not necessitate or even render it appropriate to assign one filing date to both charges. Where the date of filing is significant in a particular context, as here, we perceive no sound reason why the

actual date should not be controlling.

We conclude therefore that the Superior Court did not err in denying a trial de novo.

The judgments are affirmed.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied February 1, 1983.