[No. 33365-1-II.   Division Two.   April 4, 2006.]

MARK S. FARHOOD ET AL., *Respondents*, v. JILL D. ALLYN, *Individually and as Administrator*, ET AL., *Appellants*.

---

*Ben Shafton*, for appellants.

*Arnold J. Barer*, for respondents.

¶1 BRIDGEWATER, J. — Mark Farhood moves to dismiss Jill Allyn's appeal of the trial court's order enforcing this court's mandate in a prior appeal. After a commissioner initially denied his motion, we heard oral argument on his motion under RAP 17.5(b) and 17.7. We hold that RAP 12.2 limits RAP 2.2(a) to prohibit an appeal of an order enforcing mandate because RAP 12.2 makes our earlier decision

binding on the parties and on the trial court unless a postjudgment motion challenges issues not already decided by the appellate court. Here, the issue raised is one we previously decided. We dismiss the appeal.

## FACTS

¶2  This court summarized the facts underlying the original appeals in its earlier opinion as follows:

> On January 22, 1999, Steven Asher lost control of his car, resulting in serious spine, rib, pelvis, and other injuries to him. His passenger, Joseph Allyn, died. Allyn's widow (Allyn) filed a wrongful death action, and the State brought vehicular homicide and vehicular assault charges against Asher.
>
> Upon filing the complaint in March 1999, Allyn obtained an ex parte writ of prejudgment attachment on some of Asher's real property, including three lots in Washougal, Washington. Allyn received the attachment by alleging, "the damages for which the action is brought are for injuries arising from the commission of some felony" under RCW 6.25.030(9). The trial court issued an order to show cause why the attachment should not continue, attached a statement of Asher's right to a hearing, and set a hearing date for April 16, 1999. Asher submitted a written opposition to the attachment. But there is no record presented of that hearing and, as Allyn admits, the trial court did not issue any order or findings afterward.
>
> Asher then negotiated and completed the sale of his three Washougal properties to Farhood during August to September 1999. Farhood learned of the felony-injury attachment and spoke with Asher's criminal defense attorney before purchasing the property.
>
> On May 2, 2000, a jury found Asher not guilty of both vehicular homicide and vehicular assault.
>
> A year later, on May 16, 2001, Farhood attempted to intervene in Allyn's wrongful death suit; he noted that Asher had been acquitted. That trial court denied Farhood's motion to intervene. On August 10, 2001, Farhood then initiated a declaratory judgment action to quiet title. On cross motions for summary judgment, the trial court granted summary judgment in Allyn's favor.

On November 7, 2001, a jury in the wrongful death case found Asher negligent and awarded $1,001,736.13, including costs. Asher appealed. After Allyn collected payment from Asher's insurance policy, the judgment debt remained at $545,829.65 as of January 18, 2002.

On February 22, 2002, Allyn began the process to compel a sale of the Washougal properties by obtaining a writ of execution. Allyn took the properties by bidding $400,000 of the outstanding judgment debt.

*Farhood v. Allyn*, noted at 118 Wn. App. 1050, 2003 Wn. App. LEXIS 2116, at *2-4 (footnote omitted). Farhood then appealed "the confirmation of the sale in the wrongful death suit and the . . . summary judgment in favor of Allyn in the quiet title action." *Farhood*, 2003 Wn. App. LEXIS 2116, at *2.

¶3 During the first appeal, Farhood argued that the ex parte prejudgment writ of attachment was unconstitutional. Allyn responded by asserting that that the adversarial hearing took place on April 16, 1999, and cured any error. At the earlier oral argument, Allyn argued extensively exactly what she argues now: that the hearing cured the unconstitutionality of the ex parte writ of attachment. After oral argument, we ordered Allyn to supplement the record by providing all documents relating to that hearing, including any clerk's minutes, any report of proceedings, any trial court briefs, and any orders resulting from the hearing. Allyn provided only an electronic notation that the hearing occurred and a copy of a brief filed in opposition to the ex parte writ; Allyn conceded that the trial court entered no order after this hearing.

¶4 Farhood replied by arguing that the adversarial hearing could not cure the unconstitutional nature of the writ of attachment, especially because no order issued from the later hearing. We resolved this issue in Farhood's favor. Although we could tell that some kind of hearing had occurred, there was no record and the trial court did not issue any appealable order as a result of the hearing.

¶5 Our opinion held that the ex parte prejudgment writ of attachment violated constitutional due process standards. We then explained that

> the due process violation was complete when Allyn invoked the ex parte attachment. We need not address whether a later hearing could have cured the constitutional problem because there is no record that the hearing took place and no orders were issued from that date from which an appeal could have issued.

*Farhood*, 2003 Wn. App. LEXIS 2116, at *10. Because there was no appealable order (either continuing the attachment or purporting to cure it), the hearing was irrelevant; Allyn executed on Farhood's property under the unconstitutional temporary ex parte order. Nevertheless, the second sentence of the above quotation is the basis for Allyn's current claim that the trial court was allowed to take postmandate action other than simply enforcing this court's mandate.

¶6 Because this court had held the attachment invalid and because that ex parte attachment was the only basis for Allyn's forced sale of property that belonged to someone other than the judgment debtor, this court reversed both lower court actions:

> Because we hold that there was no valid attachment, the sale on writ of execution was improper. The appropriate remedy is nullifying the attachment, and the court should quiet title to the property in Farhood, free and clear of Allyn's interest.

*Farhood*, 2003 Wn. App. LEXIS 2116, at *11. We held that the unconstitutionality of the original prejudgment attachment was determinative; thus, the later amendment of that writ was irrelevant. *Farhood*, 2003 Wn. App. LEXIS 2116, at *11 n.4. This court then "[r]eversed and remanded for orders consistent with this opinion." *Farhood*, 2003 Wn. App. LEXIS 2116, at *11.

¶7 Allyn unsuccessfully moved for reconsideration, arguing the same issue: the effect of the later hearing. She then unsuccessfully petitioned the Washington State Supreme

Court for review. We filed the mandate on July 19, 2004. On April 18, 2005, Farhood filed in superior court a "Motion for Judgment on Remand Quieting Title." Clerk's Papers (CP) at 69-71. By this motion, he sought to enforce this court's mandate by obtaining an order "vacating the writ, setting aside the sale and quieting title in the property to Farhood." CP at 71.

¶8 On approximately May 3, 2005, Allyn filed a "Response to Motion for Judgment on Remand." Allyn did not file a formal motion for new trial under CR 59 or for relief from judgment under CR 60.

¶9 In her "Response," Allyn objected to the trial court entering Farhood's requested order vacating the writ, voiding the sale, and quieting title in Farhood. She argued that she now had new evidence not part of the earlier appellate record regarding an issue this court had not considered. Specifically, she claimed that she now had proof[1] that there was an adversarial hearing regarding the prejudgment writ on the date scheduled, April 16, 1999. She further claimed that this cured the constitutional violation and made the writ valid from that point forward.

¶10 As noted above, after Allyn relied on the effect of this hearing at the previous oral argument on June 23, 2003, we issued an order on June 30, 2003, directing Allyn to supplement the record with all documentation of that hearing by July 25, 2003. Allyn could provide only an electronic notation, and she conceded that the trial court entered no order after this hearing. Allyn provided no clerk's minutes or transcript. Thus, whether this minimal hearing cured the unconstitutional ex parte attachment was both briefed and argued before we issued our previous opinion and mandate.

¶11 On May 10, 2005, the trial court entered Farhood's requested order; as required by this court's opinion, the order voided the attachment, set aside the writ of execution,

---

[1] Allyn still did not provide formal clerk's minutes or a transcript; instead, she provided some informal notes of the courtroom clerk on the docket sheet listing the hearing.

and quieted title in Farhood. The trial court did not file a separate order regarding Allyn's arguments against entry of this order, but it sent a letter to the parties explaining that "[a] clear and precise reading of the Opinion compels me to execute this Order," because "the Writ of Attachment was void at its issuance." Resp't's Mot. to Dismiss Appeal, Ex. F. The trial court also noted that whatever happened at the adversarial hearing, "there is no record of any decision following the hearing," which the court believed to be fatal, given this court's opinion. Resp't's Mot. to Dismiss Appeal, Ex. F. Allyn filed a notice of appeal to the trial court's order enforcing our mandate; Farhood has moved to dismiss her attempted appeal.

## ANALYSIS

¶12 The Rules of Appellate Procedure "govern proceedings in the . . . Court of Appeals for review of a trial court decision." RAP 1.1(a). The Washington State Supreme Court has inherent constitutional authority to promulgate rules governing court procedures and adopted the RAP under that authority. *See City of Seattle v. Hesler*, 98 Wn.2d 73, 80-81, 653 P.2d 631 (1982). The RAP supersedes conflicting statutes unless explicitly noted within the RAP. RAP 1.1(g), (h).

¶13 Thus, whether a particular decision is appealable is governed exclusively by the provisions of the RAP. RAP 2.2(a), with certain limits, provides the exclusive list of superior court decisions that may be reviewed as a matter of right (appealed). *See also* RAP 2.1(a)(1). Allyn is attempting to appeal an order that voids the sale of property to satisfy the judgment in a wrongful death case and that quiets title in a quiet title action. The trial court's order also denies Allyn the ability to present what it claims is additional evidence and additional issues to the trial court. Thus, the trial court's order appears to fall within the following appealable categories of superior court decisions, found in RAP 2.2(a):

(1) *Final Judgment.* The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.

. . . .

(3) *Decision Determining Action.* Any written decision affecting a substantial right in a civil case which in effect determines the action and prevents a final judgment or discontinues the action.

. . . .

(13) *Final Order After Judgment.* Any final order made after judgment which affects a substantial right.

¶14 RAP 2.2(a) provides, however, that such superior court decisions are appealable only if not "otherwise prohibited by statute or court rule." Under the particular facts of this case, RAP 12.2 is a court rule that prohibits the appeal of the order enforcing mandate otherwise appealable under RAP 2.2(a). RAP 12.2 provides, in part, that

[u]pon issuance of the mandate . . . , the action taken or decision made by the appellate court is *effective and binding* on the parties to the review and *governs all subsequent proceedings in the action in any court,* unless otherwise directed upon recall of the mandate as provided in rule 12.9, and except as provided in rule 2.5(c)(2). After the mandate has issued, the trial court may, however, hear and decide postjudgment motions otherwise authorized by statute or court rule *so long as those motions do not challenge issues already decided by the appellate court.*

RAP 12.2 (emphasis added).

¶15 Allyn fails to recognize this rule is a limit on the appealability of the order enforcing the mandate in this case. RAP 12.2 is a broad statement of the authority and binding power of the appellate decision. The decision is binding unless the appellate court recalls the mandate or unless the trial court properly makes a new substantive decision and the appellate court changes its view of the law during the second appeal. RAP 2.5(c), 12.2, 12.9.

¶16 Significantly, the trial court's authority to take actions not in strict conformance with the appellate decision

are limited to postjudgment motions raising issues not already decided by the appellate court. Here, Allyn did not formally file any postjudgment motion, such as a motion for new trial or relief from judgment. Instead, she simply asked the trial court to refuse to enter the order enforcing the mandate in order to preserve the status quo, suggesting that the parties "may" "develop further facts" for a future trial or summary judgment motion.

¶17 Further, the issue Allyn raises—the effect, if any, of the adversarial hearing after issuance of the ex parte prejudgment writ—was one we tried to fully consider during the first appeal. From our first opinion it is clear that, out of an abundance of caution and respect for the parties to present a full record supporting their argument, we wanted to review whatever record existed of this purported adversarial hearing. We did not remand to develop the record; rather, we issued a final decision based on the record the parties provided.

¶18 But we also held that the "due process violation was complete when Allyn invoked the ex parte attachment" and that the subsequent hearing was irrelevant because of Allyn's stipulation that no appealable order resulted from the hearing, whatever else occurred. *Farhood*, 2003 Wn. App. LEXIS 2116, at *10. Our holding that execution on the writ was impermissible was bolstered by the fact that the temporary ex parte (and unconstitutional) attachment was the one still in effect when Allyn executed on it. Allyn made the same arguments she raises now during the earlier appeal; we simply agreed with Farhood that this particular hearing could not cure the constitutional violation. Thus, the issue Allyn raised in the trial court is one "already decided by the appellate court" under RAP 12.2. RAP 12.2

bars Allyn's attempt to appeal the order enforcing the clear mandate of this court.

¶19 The appeal is dismissed.[2]

HUNT and PENOYAR, JJ., concur.

---

[2] Without significant argument, Farhood requests sanctions under RAP 18.9(a). We are sympathetic to a claim that this appeal merely seeks to delay enforcement of our earlier mandate and increases Farhood's legal expenses. But we cannot say that there were no debatable issues, given that a Division Two commissioner initially denied Farhood's motion to dismiss and given the lack of published post-RAP decisions. *See Pearson v. Schubach*, 52 Wn. App. 716, 725-26, 763 P.2d 834 (1988), *review denied*, 112 Wn.2d 1008 (1989).