[No. 12465-0-I. Division One. September 6, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
L. MURPHY, *Appellant*.

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Edwin Inkley* and *Reba Weiss, Deputies,* for respondent.

CALLOW, J.—Michael L. Murphy, a juvenile, appeals a trial court finding that to impose a sentence *within* the standard range of punishment would be a clear danger to society and that such a disposition would be a manifest injustice.

The issues presented are:

1. Should the State's motion to supplement the record be granted?

2. Was Murphy denied his right to accelerated appeal?

3. Did the trial court err when it considered the probation officer's unsworn testimony during the disposition hearing?

4. Was Murphy given adequate notice of the possibility of a "manifest injustice" finding?

5. Does RCW 13.40.150 limit the parties who may submit disposition recommendations solely to the prosecution and the defense?

6. Did the trial judge err when he failed to read the juvenile's entire social file before making a "manifest injustice" finding?

7. Does the record support the trial court's finding of a "manifest injustice"?

8. Must the trial court find beyond a reasonable doubt that the juvenile constitutes a clear threat of *bodily harm or injury* to society before a "manifest injustice" finding can be made?

On November 3, 1982, a disposition hearing was held regarding Michael L. Murphy, a juvenile, for the charges of third degree theft, third degree malicious mischief and vehicle prowling. Michael's criminal record was as follows:

| | | |
|---|---|---|
| Crim. trespass 1st degree | 8/01/79 | pleaded guilty 12/15/79 |
| Burglary 2nd degree | 3/04/82 | pleaded guilty 9/14/82 |
| Burglary 2nd degree | 8/07/82 | pleaded guilty 9/14/82 |

Murphy committed the following offense in addition to those noted in his criminal history:

Malicious mischief 3rd degree 9/01/79
pleaded guilty 12/15/79

Murphy pleaded guilty to the charges of third degree theft and third degree malicious mischief. The trial court dismissed the charge of vehicle prowling, declined to impose sanctions for third degree malicious mischief, and made a manifest injustice finding of 52 weeks' detention for third degree theft. The manifest injustice finding was made partially on the basis of the probation officer's recommendation. The State and defense counsel recommended a disposition within the standard range. The standard range of disposition for a third degree theft middle offender is 9 months' supervision, 48 to 72 hours' community service, $75 fine, and 8 to 15 days' detention.

Murphy filed a timely notice for accelerated review of the trial court's manifest injustice finding on November 5, 1982. However, he failed to file a motion for accelerated review pursuant to RAP 18.13 and did not perfect the record for review in a timely manner. On December 27, 1982, this court ordered Murphy to file a motion for accelerated review and to perfect the record. In the event Murphy failed to comply with the court's order, a court's motion to dismiss was to be heard before a commissioner on January 7, 1983. On December 28, 1982, Murphy withdrew his motion for accelerated review and requested that the appeal be given the same status as a regular appeal. During the course of the appeal, the State moved to supplement the record with additional clerk's papers and exhibits. This motion was referred for consideration at the hearing on the merits.

First, should the State's motion to supplement the record be granted?

The State claims the record is insufficient to permit a proper review and requests it be allowed to supplement the record with additional clerk's papers and exhibits, pursuant to RAP 9.10. Murphy opposes the State's motion to supplement the record and claims none of the material with

which the State seeks to supplement the record was part of the record below. The State filed supplemental clerk's papers on April 29, 1983, which contained six of the documents proffered to supplement the record. The State also wishes to supplement the record with the predisposition report, which is already part of the record on appeal.

■ The remaining document is an affidavit by Murphy's probation officer attesting to Murphy's notification of her intent to recommend a manifest injustice finding and was not part of the record below. Because the affidavit was not part of the record in the trial court, we will not consider it. *State v. Armstead*, 13 Wn. App. 59, 66, 533 P.2d 147 (1975). The State's motion to supplement the record is granted in regard to the seven other documents that were part of the record before the juvenile court.

The second issue is whether Murphy was denied his right to accelerated appeal.

Murphy claims the failure of this court to decide his appeal within 45 days, pursuant to RCW 13.40.230, violated his constitutional and statutory right to appeal. He contends the manifest injustice finding should be vacated and the case remanded for sentencing within the standard range.

RCW 13.40.160 permits the trial court to make a finding of manifest injustice. A manifest injustice finding is a sentence outside the standard range of disposition. RCW 13.40.230 governs the appeal of a manifest injustice finding and provides in part:

(1) Dispositions reviewed pursuant to RCW 13.40.160, as now or hereafter amended, shall be reviewed in the appropriate division of the court of appeals.

An appeal under this section shall be heard solely upon the record that was before the disposition court. No written briefs may be required, and the appeal shall be heard within thirty days following the date of sentencing and a decision rendered within fifteen days following the argument. *The supreme court shall promulgate any necessary rules to effectuate the purposes of this section.*

. . .

(5) Pending appeal, a respondent may not be committed or detained for a period of time in excess of the standard range for the offense(s) committed or sixty days, whichever is longer. The disposition court may impose conditions on release pending appeal as provided in RCW 13.40.040(4) and 13.40.050(6). Upon the expiration of the period of commitment or detention specified in this subsection, the court may also impose such conditions on the respondent's release pending disposition of the appeal.

(Italics ours.) This statute became effective July 1, 1978 and has since been amended twice. None of the amendments, however, changed the time limitations for expedited appeals.

On July 18, 1978, the Supreme Court adopted RAP 18.13 to effectuate the purposes of RCW 13.40.230(1). RAP 18.13 provides:

(a) **Generally.** A disposition in a juvenile offense proceeding which is beyond the standard range for that offense *may be reviewed in the manner provided in the rules for other decisions or by accelerated review as provided in this rule.*

(b) **Accelerated Review by Motion.** A party seeking accelerated review of the disposition shall do so by motion. The motion must include (1) the name of the party filing the motion; (2) the offense; (3) the disposition of the trial court; (4) the standard range for the offense; (5) a statement of the disposition urged by the moving party; (6) copies of the clerk's papers and a written verbatim report of those portions of the disposition proceeding which are material to the motion; (7) an argument for the relief the party seeks; and (8) a statement of any other issues to be decided in the review proceeding.

(c) **Motion Procedure Controls.** The motion procedure, including a party's response, is governed by Title 17.

(d) **Accelerated Review of Other Issues.** The decision of issues other than those relating to the juvenile offense disposition may be accelerated only pursuant to Rules 18.8 and 18.12.

(Italics ours.)

■ RAP 18.13, effective July 1, 1978, differs from RCW 13.40.230 insofar as the rule provides for an appeal through normal channels *in addition* to an accelerated review. In the event of a conflict, a court rule will supersede a procedural statute, *State ex rel. Department of Ecology v. Anderson,* 94 Wn.2d 727, 620 P.2d 76 (1980); RCW 2.04-.200, but court rules and statutes should be harmonized whenever possible. "[A]n interpretation which gives effect to both provisions is the preferred interpretation." *Emwright v. King Cy.,* 96 Wn.2d 538, 543, 637 P.2d 656 (1981).

RCW 2.04.190 grants the Supreme Court the power to regulate and prescribe "by rule the forms for and the kind and character of the entire pleading, practice and procedure to be used in all suits, actions, appeals and proceedings of whatever nature by the supreme court, superior courts and justices of the peace of the state." Not only are the court's rulemaking powers derived from statute, "[i]ts inherent power to govern court procedures stems from Const. art. 4, § 1, vesting the judicial power in the Supreme Court and other courts designated in the constitution." *Seattle v. Hesler,* 98 Wn.2d 73, 80, 653 P.2d 631 (1982).

■ Because the time limitations of RCW 13.40.230 are primarily procedural, RAP 18.13, which provides that a manifest injustice finding "may be reviewed in the manner provided in the rules for other decisions or by accelerated review", prevails over the 45–day limit enunciated in RCW 13.40.230(1). RAP 18.13 was adopted to effectuate the legislative objectives of RCW 13.40.230 and is consistent with the statute.

Murphy, after failing to perfect his record on appeal and failing to move for accelerated review, withdrew his request for speedy review. A juvenile respondent is entitled to an expedited appeal of his manifest injustice disposition only if he seeks review pursuant to RAP 18.13. He cannot now claim the appeal was not decided in a timely manner.

The third issue is whether the trial court erred when it considered the probation officer's unsworn testimony dur-

ing the disposition hearing.

*State v. Whittington,* 27 Wn. App. 422, 618 P.2d 121 (1980) noted that a disposition hearing, at which a manifest injustice finding is sought, is an adversarial proceeding. The defendant must be afforded at such hearings the constitutional rights to confrontation and cross examination of witnesses. Two factors should be considered when deciding if hearsay is admissible under the confrontation clause:

"(1) reliability of the testimony sought to be admitted, and (2) availability of the source (the out of court declarant) to appear, swear, and be cross-examined."

*State v. Whittington, supra* at 429 (quoting *State v. Smith,* 85 Wn.2d 840, 849, 540 P.2d 424 (1975)).

After reviewing the record, *Whittington* concluded

The testimony of the probation counselor does not raise an issue of constitutional magnitude, since, by failing to exercise his statutory right to cross-examine him, Whittington waived any objections to his testimony.

*State v. Whittington, supra* at 429.

 Murphy's probation officer was present in court. As in *Whittington,* Murphy did not exercise his right to cross-examine the probation officer. This waived any objection to the probation officer's testimony. In addition, the Legislature has sanctioned the disposition court's consideration of "all relevant and material evidence . . . even though such evidence may not be admissible in a hearing on the information." RCW 13.40.150(1). The trial court did not err.

The fourth issue is whether Murphy was given adequate notice of the possibility of a manifest injustice finding.

Murphy claims he was not given notice of a possible manifest injustice finding. He contends his constitutional rights were violated since due process compels that he be provided notice of a possible manifest injustice finding.

The record indicates that Murphy was indeed given notice of the probation officer's intent to recommend a manifest injustice finding for Murphy's third degree theft conviction. Both plea statements for third degree theft and third degree malicious mischief, signed prior to the disposi-

tion hearing, acknowledge notice of the probation officer's intent to recommend a manifest injustice finding. Before the trial court accepted Murphy's guilty plea for third degree theft, defense counsel stated that Murphy "is also very aware of the fact that the Probation Counsellor is recommending a Manifest Injustice." Further, the trial judge, in ensuring that Murphy's guilty plea was knowingly and voluntarily made, asked Murphy:

Do you realize that if you plead guilty, even though the Prosecutor has agreed to recommend within the standard range, that I as the sentencing Judge could decide to send you to the Institution for a good deal longer?

Murphy replied that he understood and was aware that the probation officer was recommending he be committed for 1 year. The contentions are without merit.

■ Murphy also claims that due process mandates the juvenile be given notice of the *basis* for the manifest injustice recommendation. Murphy has failed to provide us with an adequate record to properly review this alleged error. We decline to address this issue. *See Jacobsen v. State,* 89 Wn.2d 104, 112, 569 P.2d 1152 (1977).

The fifth issue is whether RCW 13.40.150(1) limits the parties who may submit disposition recommendations solely to the prosecution and defense.

Murphy claims that RCW 13.40.150(1) limits those who may submit disposition recommendations to the court solely to the prosecutor and defense counsel. He then claims that a manifest injustice finding may only be imposed when sought *and* recommended by the State. He does not cite any authority in support of this contention.

■■ RCW 13.40.150(1) provides, in its entirety:

In disposition hearings all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though such evidence may not be admissible in a hearing on the information. The youth or the youth's counsel and the prosecuting attorney shall be afforded an opportunity to examine and controvert written reports so received and to cross–

examine individuals making reports when such individuals are reasonably available, but sources of confidential information need not be disclosed. The prosecutor and counsel for the juvenile *may* submit recommendations for disposition.

(Italics ours.) RCW 13.40.150(1) does not, as claimed, mandate that only the prosecutor or counsel for the juvenile shall submit recommendations for disposition. RCW 13.40-.150(1) states only that they may.

The expression of one thing excludes others not expressed. *Swanson v. White,* 83 Wn.2d 175, 183, 517 P.2d 959 (1973). However, *Swanson* noted that this rule is used only as a means of determining legislative intent, and is not applicable where a strongly manifested intent to the contrary is expressed elsewhere.

Here, the Legislature expressed a contrary intent. RCW 13.04.040 provides in part:

The probation counselor shall:

. . .
(2) *Make recommendations to the court regarding the need for continued detention* or shelter care of a child unless otherwise provided in this title;

. . .
(4) Prepare predisposition studies as required in RCW . . . 13.40.130 . . ., and be present at the disposition hearing to respond to questions regarding the predisposition study . . .

(Italics ours.) RCW 13.40.130(7) provides:

The court following an adjudicatory hearing may request that a predisposition study be prepared to aid the court in its evaluation of the matters relevant to disposition of the case.

We hold that the court may consider the recommendations of probation counselors.

Murphy cites *State v. Whittington, supra,* to support his second contention that a manifest injustice finding may only be made upon recommendation of the State. *Whittington* held that a juvenile is entitled to due process during dispositional hearings by analogizing a manifest

injustice finding to a deadly weapon or habitual offender finding. Murphy argues that the court may not sua sponte make a manifest injustice finding. This contention is not relevant, however, since the court did not make the manifest injustice finding on its own motion.

The sixth issue is whether the trial judge erred when he failed to read the juvenile's entire social file before making a manifest injustice finding.

Murphy claims that RCW 13.40.150 mandates the trial court to read *all* the information and materials submitted by the parties and their counsel before entering a disposition order. Because the trial judge did not read the entire social file, he asserts that the trial judge erred.

The record indicates that the trial court reviewed and considered Murphy's social file. When asked by defense counsel if the trial judge had read the legal and social file of Murphy, the trial judge acknowledged he had not read through the balance of the social file although he had read Murphy's legal file. The judge then asked defense counsel if he had any objection to marking both files as exhibits. Murphy did not object.

■■ Unless an issue is of constitutional magnitude, an issue, theory, or argument not presented to the trial court will not be considered for the first time on appeal. *Herberg v. Swartz,* 89 Wn.2d 916, 925, 578 P.2d 17 (1978); *State v. Jamison,* 25 Wn. App. 68, 75, 604 P.2d 1017 (1979). Here, the judge's failure to read through Murphy's entire social file is not an issue of constitutional magnitude. Thus, we need not consider it for the first time on appeal. In any event, RCW 13.40.150 does not mandate the trial court to read the entire social file.

RCW 13.40.150 provides in part:

(3) Before entering a dispositional order as to a respondent found to have committed an offense, the court shall hold a disposition hearing, at which the court shall:

. . .

(b) Consider information and arguments offered by

parties and their counsel;

The seventh issue is whether the record supports the trial court's finding that it would be a manifest injustice to sentence the juvenile within the standard range.

Murphy claims the trial judge failed to set forth his reasons for concluding that a sentence within the standard range would present a clear danger to society. He asserts that this court should remand the case for disposition within the standard range, pursuant to RCW 13.40.230(3). The State claims that the record before the disposition judge and the reasons given by the judge clearly and convincingly support the conclusion that a disposition within the standard range would constitute a manifest injustice.

RCW 13.40.230(3) states:

> If the court does not find subsection (2)(a) of this section it shall remand the case for disposition within the standard range or for community supervision without confinement as would otherwise be appropriate pursuant to this chapter.

Subsection 2(a) of RCW 13.40.230 provides:

> To uphold a disposition outside the standard range, . . . the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range . . . would constitute a manifest injustice, . . .

JuCR 7.12(d) provides:

> If the court imposes a sentence outside the standard range for the offense, the disposition order shall set forth those portions of the record material to the disposition.

*State v. Rhodes,* 92 Wn.2d 755, 760, 600 P.2d 1264 (1979) equated the clear and convincing standard of review enunciated in RCW 13.40.230(2) to "beyond a reasonable doubt." Thus, any manifest injustice finding must be supported by proof beyond a reasonable doubt that the defendant and the standard range for the offense presents a clear danger to society. *State v. Strong,* 23 Wn. App. 789, 793, 599 P.2d 20 (1979) held that the trial judge must com-

ply with JuCR 7.12(d) in addition to

specify[ing] those factors set forth in RCW 13.40.150, or such other factors occurring in the record which impel the decision to go outside the standard range, and designate those portions of the social and legal files supporting the factors relied upon.

In the findings of fact and conclusions of law, the judge stated:

In making its finding of manifest injustice, the court has relied upon the oral argument of counsel and the probation counselor, upon the respondent's legal files and upon his past criminal history. The court also has relied upon the disposition report of [the] probation counselor . . ., admitted as a sealed exhibit at this hearing.

The court also stated why it felt a disposition within the standard range would fail to adequately protect the public from the juvenile and fail to provide necessary treatment and supervision of the juvenile.

8. Disposition within the standard range would fail to adequately protect the citizenry from the respondent's criminal behavior and would fail to make the respondent accountable for the offense because:

Respondent has had numerous prior contacts with the juvenile system, several of which have been recent. Prior sanctions have included both community supervision and detention. Respondent recently served in excess of 50 days detention on another matter and reoffended soon after his release. Prior sanctions have had little effect on respondent and have not altered his criminal activity, which is escalating. In addition, respondent has shown no remorse for his victims, and blames others for his criminal behavior. Given respondent's past record and current situation and attitudes, he is highly likely to reoffend soon after his release if detained for a period within the standard range.

9. Disposition within the standard range would fail to provide necessary treatment and supervision of the respondent because:

Prior attempts at community supervision have not been successful. Neither respondent nor his parents have shown proper interest in such an approach. Respondent's parents do not provide adequate direction for respondent

and are unable to exert proper control over his behavior, and would not provide proper guidance or supervision if respondent were to be released into the community. In addition, the peer group with which the respondent associates is delinquent, and encourages respondent's delinquent behavior. Respondent has failed to take school seriously, and has been suspended for missing class and fighting. Respondent has developed no long–term goals and has never worked; he is impulsive and has little ability to understand the impropriety of his criminal actions. Respondent's attitudes and behavioral pattern have contributed to his criminal behavior. It is highly unlikely that such attitudes and behavior could be changed within the period of the standard range.

The trial court did not err.

The eighth issue is whether the trial court must find beyond a reasonable doubt that the juvenile defendant constitutes a clear threat of *bodily harm or injury* to society before a manifest injustice finding can be made.

Murphy claims "clear danger to society" means "clear threat of bodily injury or harm to members of the public." He lists five factors considered by the sentencing commission in determining the standard range of an offense. Murphy claims that since the five factors were considered when setting the standard range, they may not be considered when determining that the juvenile constitutes a "clear danger to society."

 *State v. Whittington,* 27 Wn. App. 422, 425–26, 618 P.2d 121 (1980) stated:

Before a more severe punishment [than the standard range] could be imposed, it was necessary for the court to conclude that community supervision would create a "danger to society." This is indistinguishable from the statutory requirement in *Specht* [*v. Patterson,* 386 U.S. 605, 18 L. Ed. 2d 326, 87 S. Ct. 1209 (1967)], *i.e.,* that the court determine whether the defendant "constitutes a threat of bodily harm to members of the public". *Specht v. Patterson, supra* at 607.

*Whittington* drew the above comparison for the purpose of imposing due process standards on a disposition hearing,

not for the purpose of imposing a "bodily harm" require-
ment on a manifest injustice finding. Viewing the above
excerpt in the context of the entire opinion, we do not read
*Whittington* to require that the juvenile constitutes a clear
threat of bodily injury or harm to society before a manifest
injustice finding may be made.

The purpose of the juvenile justice act is to "[p]rotect the
citizenry from criminal behavior" and "[p]rovide necessary
treatment, supervision, and custody for juvenile offenders".
RCW 13.40.010(2)(a) and (f). A purpose of the act is to
protect people from bodily harm, but bodily harm is not
the only criminal behavior the act seeks to prevent.

In addition, the 1983 session of the Legislature amended
RCW 13.40.020(12) to define manifest injustice as

> a disposition that would either impose an excessive pen-
> alty on the juvenile or would impose a serious, and clear
> danger to society in light of the purposes of this chapter;

(Underlining indicates the amended language.) Laws of
1983, ch. 191, § 7, at 1026. Apparently, the Legislature con-
sidered adding the term "bodily harm" to the statute and
did not. Thus, it appears the Legislature did not intend
"clear danger to society" to mean "clear threat of bodily
harm."

We also reject the claim that the five factors considered
by the sentencing commission may not be used to form the
basis for a manifest injustice finding. The five factors listed
by the juvenile are:

1. Age of the juvenile;

2. The crime for which the juvenile is to be sentenced;

3. The number of previous offenses committed by the
juvenile;

4. The nature of the previous offenses committed by the
juvenile; and

5. The length of time since the juvenile's last offense.
RCW 13.40.150(3), which lists several factors for the trial
court to consider before entering a disposition order, shows
a legislative intent clearly contrary to Murphy's conten-

tions.

The trial court's finding of a manifest injustice is affirmed.

ANDERSEN, C.J., and SCHOLFIELD, J., concur.

Review denied by Supreme Court January 6, 1984.