[No. 37372-1-I. Division One. August 25, 1997.]

LONNIE C. PHILLIPS, ET AL., *Appellants*, v. KING COUNTY, ET AL., *Respondents*.

---

J. Richard Aramburu and Law Office of J. Richard Aramburu, for appellants.

Norm Maleng, Prosecuting Attorney, and Cassandra Newell, Deputy; and Lynne M. Cohee and Hillis, Clark, Martin & Peterson, for respondents.

KENNEDY, A.C.J. — Lonnie and Gloria Phillips (hereinafter, Phillips) appeal the dismissal of their complaint against King County and Lozier Homes, Inc., in which

they sought injunctive relief against and damages caused by surface water runoff from the housing development adjacent to their property. Phillips alleged in the complaint that the surface water drainage system approved by the County and installed by Lozier Homes was the cause of the damage to the Phillips property. The trial court granted both defendants' motions for summary judgment dismissing Phillips' complaint. On appeal, Phillips contends that the public duty doctrine does not shield the County from liability; that the respondents should be held responsible in tort for casting water onto the Phillips land; that the inverse condemnation, trespass, elimination of access and appropriation claims were improperly dismissed; and that Phillips was not required to exhaust remedies by pursuing a writ of certiorari prior to filing the damages suit. For the reasons hereinafter stated, we affirm the trial court in part, but reverse the grant of summary judgment dismissing the negligence claim as against Lozier Homes, Inc., and reverse the grant of summary judgment dismissing the inverse condemnation and trespass claims as against the County.

## FACTS

Lonnie Phillips purchased a 4.82-acre parcel of land on the East Sammamish plateau in 1980. In 1982, Phillips built a home on the property, leaving the majority of the parcel wooded. The Phillips property is bounded on the west by 236th Avenue, an unimproved county road. Phillips does not use that road to access his property, instead using a road on the opposite side of the property. However, if Phillips decides in the future to subdivide and develop his property, as would be allowable under the currently applicable zoning ordinance, it is likely that he will wish to utilize the unimproved county road.

In 1988, Lozier Homes filed an application to subdivide the 19-acre parcel west of the Phillips land into 78 residential lots to be called "Autumn Wind." The County issued a declaration of nonsignificance, which meant that

Lozier did not have to prepare an environmental impact statement for the project. Following public hearings, the County approved a preliminary plat conditioned on its subsequent approval of a surface water drainage plan.

In March 1990, Lozier submitted an engineering plan calling for a storm drainage conveyance outlet at the southeast corner of the Autumn Wind property, which would have discharged water into a drainage easement on adjacent land (not the Phillips land). However, the owner of that land refused to give Lozier the requested drainage easement. Lozier therefore prepared an alternative drainage plan, which is the subject of this lawsuit.

The alternative drainage plan called for a combination of pipe and ditch to transport water from a detention pond to a 300-foot long flat dispersal trench purportedly designed to simulate the natural sheet flow conditions existing for the drainage basin. In addition, drains were to be constructed at locations with seepage zone areas. The drain system, known as a "sheet flow spreader," was to be located in the undeveloped county right-of-way immediately adjacent to the Phillips property. The County approved this system after concluding that it complied with the code and regulations applicable to Autumn Wind, and that it would most approximate the natural pre-development drainage conditions.

Lozier constructed the drainage system in the late summer of 1992. After the system was installed, Phillips complained to the County about the spreaders in the right-of-way and about the additional water flowing onto his property. Phillips met with County Council Member Brian Derdowski to express concerns over the project, before the Council voted on Lozier's final plat application. The Council nevertheless approved the final plat on February 1, 1993. Phillips did not seek judicial review of the final plat decision.

Upon recordation of the final plat, King County assumed ownership, maintenance and control of the Autumn Wind drainage system.

474

■ On October 21, 1993, Phillips filed a complaint alleging five causes of action against the County and Lozier: (1) illegal dispersal of drainage waters onto plaintiffs' property (in essence, a negligence claim), (2) inverse condemnation and trespass, (3) improper elimination of access to plaintiffs' property, (4) appropriation of a private ditch or drainage way, and (5) the County's failure to comply with the terms of the State Environmental Policy Act (SEPA).[1] Both defendants moved for summary judgment dismissing Phillips's complaint.

In opposition to the summary judgment motions, Phillips submitted portions of the deposition of a hydrologist, Keith Leytham. Leytham testified that the volume of water flowing over Phillips' property had doubled and that the velocity of the flow had increased five-fold, after the construction of the Autumn Wind drainage system. Leytham testified that following any significant amount of rain, which would invariably cause Autumn Wind's detention pond to overflow approximately 25 percent of the Phillips land had standing and flowing water upon it, ranging in depth from several inches to two feet. Leytham testified that the spreaders installed by Lozier did not "do anything useful" in terms of either reducing the rate or volume of outflow from the Autumn Wind property. He opined that the drainage system had been designed incorrectly, in that the state of the art of designing and constructing drainage systems had improved significantly and that fact was well known to engineers by the time this drainage plan was submitted to the County. Not only did the detention pond overflow on a regular basis, but the soil surrounding the spreader system was too impervious to allow for the percolation of any significant amount of water, so that it was inevitable that large amounts of water would pour onto the Phillips property. Leytham conceded that the drainage system installed by Lozier

---

[1]Because Phillips has not devoted any portion of his opening or reply brief to the trial court's dismissal of the SEPA claim, we treat that cause of action as abandoned on appeal, and will not address it. *E.g., McKee v. American Home Prods., Corp.*, 113 Wn.2d 701, 704, 782 P.2d 1045 (1989) (court will not consider issues on appeal that are not supported by argument and citation to authority).

complied with the county regulations adopted in 1979, which were applicable to the Autumn Wind development. He also testified that, in his opinion, the increase in water flow over the Phillips property was the same as if no drainage system had been installed; and that unless the Autumn Wind system were redesigned, in order to develop his property Phillips would have to design and install a sophisticated drainage system of his own, to get rid of Autumn Wind's water standing upon and flowing across his property.

The appellants also submitted Lonnie Phillips' deposition in opposition to the summary judgment motions. Mr. Phillips testified that the soil on his property was much wetter than had been the case before the Autumn Wind drainage system was installed. Previously, there would be a few puddles of standing water following a heavy rain, but the puddles would rapidly disappear. Although there had been no damage to the Phillips home, landscaping, or driveway, the soil on his property had become totally saturated in the vicinity of the spreaders.

Phillips also presented evidence that Lozier Homes had been warned by its engineer that although the alternative drainage system it designed complied with the applicable county code, the system was in fact inadequate, and that flooding of adjacent property was likely to occur.

Phillips also presented evidence that the spreader system installed in the county road right-of-way was not designed to be paved over, and would have to be removed if the road were ever to be paved and placed into active service (for example, in the event that Phillips were to develop his property and seek access over the now-unimproved county right-of-way). Phillips also claimed to have an independent easement for access that predated the grant of the right-of-way to the County for road purposes.

On April 11, 1995, the trial court granted both defend-

ants' motions for summary judgment, and ordered the complaint dismissed. This timely appeal followed.

## DISCUSSION

■ In reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court and considers the facts in the light most favorable to the nonmoving party. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). Summary judgment will be granted if the record demonstrates that there is no genuine issue as to any material fact, *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986), and that the moving party is entitled to judgment as a matter of law, CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

1. Exhaustion of Remedies.

■■ King County argues that summary judgment was proper as to all claims against the County because Phillips failed to seek a writ of certiorari within 30 days of final plat approval, as provided by RCW 58.17.180.[2] Lozier Homes makes that same argument on appeal, but below argued only that Phillips' second, third, fourth, and fifth causes of action should be dismissed as to Lozier Homes on that ground. Both respondents miss the point of former RCW 58.17.180 and the current RCW 36.70C.060. Phillips is not seeking review of the King County Council's land use decision to grant final approval of the Autumn Wind's plat. Rather, Phillips is seeking injunctive relief from the water pouring onto his land through the drainage system installed by Lozier Homes and now owned and maintained

---

[2]RCW 58.17.180 has been repealed and replaced by RCW 36.70C.060, which provides that judicial review of land use decisions will not lie unless the person aggrieved: (1) has been prejudiced by the land use decision; (2) asserts interests that are among those that the local jurisdiction was required to consider when it made the land use decision; (3) would substantially benefit by judicial reversal of the land use decision; (4) has exhausted his or her administrative remedies to the extent required by law. RCW 58.17.180 contained similar requirements, including exhaustion of administrative remedies before seeking a writ of review.

by King County, and damages for injury to his property on theories sounding in tort and inverse condemnation. Moreover, a writ of certiorari is a *judicial* remedy, not an *administrative* remedy. Finally, "[t]here are no conditions precedent to the filing of an inverse condemnation action." *Rains v. Department of Fisheries*, 89 Wn.2d 740, 748, 575 P.2d 1057 (1978) (Wright, C.J., dissenting) (citing *Harkoff v. Whatcom County*, 40 Wn.2d 147, 241 P.2d 932 (1952); *Boitano v. Snohomish County*, 11 Wn.2d 664, 120 P.2d 490 (1941); *Decker v. State*, 188 Wash. 222, 62 P.2d 35 (1936)).

King County cites no authority for its position whatsoever, except to point out that damages claims are sometimes joined with petitions for review of land use decisions, as was done by election of the plaintiff in *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 829 P.2d 746 (1992), *cert. denied*, 506 U.S. 1079 (1993). When a plaintiff elects to do that, the court will consider the two actions separately. *Lutheran Day Care*, 119 Wn.2d at 114-16.

The authority cited by Lozier Homes is inapposite. In *South Hollywood Hills Citizens Ass'n for Preservation of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 677 P.2d 114 (1984), a citizens group sought judicial review of land use decisions approving two plats without first having exhausted *administrative* remedies in its effort to defeat the plats through political action. In *Lechelt v. City of Seattle*, 32 Wn. App. 831, 650 P.2d 240 (1982), *review denied*, 99 Wn.2d 1005 (1983) property owners seeking to subdivide their property brought an action to compel King County to construct a new access road and to approve the subdivision plat without access conditions. But the property owners had previously allowed preliminary plat approval with respect to that same property to expire without seeking review of conditions placed on that preliminary approval and without ever having sought final plat approval at all; thus they failed to exhaust their *administrative* remedies. In *Northwest Land & Inv., Inc.,*

*v. City of Bellingham*, 31 Wn. App. 742, 644 P.2d 740 (1982), a property owner desiring to develop its property submitted a revised final plat design. The technical review committee recommended three additional conditions before final plat approval. The property owner objected to the conditions, but the City Council adopted the conditions, and the property owner did not seek judicial review of that decision. Instead, two years later, it brought an action for tort damages, failing to specify the nature of the tort claim but arguing nevertheless that the Council's decision to impose conditions on its final plat approval gave rise to an action for tort damages. This court affirmed the trial court's summary judgment dismissing the complaint on grounds of failure of the property owner to show proximate causation: the proximate cause of the plaintiff's loss was its independent business decision to comply with the conditions, i.e., not to timely seek judicial review of the final land use decision imposing those conditions. Lozier does not argue that Phillips has failed to show proximate causation; rather, Lozier argues that Phillips' failure to bring a writ action bars all subsequent claims against Lozier Homes, Inc., arising from the water pouring onto his property, based on the doctrine requiring exhaustion of "administrative" remedies before resort to the courts.[3] In so arguing, Lozier characterizes a writ

---

[3]To the extent that Lozier Homes may have intended to incorporate an argument of lack of proximate causation into its brief by citing the *Northwest Land & Inv.* case, we reject the theory as applied to the facts in this case. The *Northwest Land & Inv.* court, by its quotation from and citation to *King v. City of Seattle*, 84 Wn.2d 239, 251, 525 P.2d 228 (1974), *see Northwest Land & Inv.*, 31 Wn. App. at 744-45, applied the independent business judgment doctrine. That doctrine defeats the legal liability prong of proximate causation, even in the presence of "but for" factual causation, where the courts determine, based on particular facts, that legal liability should not attach based on mixed considerations of logic, common sense, justice, policy and precedent. *King*, 84 Wn.2d at 249-50. Although sound policy requires a land use applicant to exhaust *administrative* remedies before suing a municipality in tort for damages caused by an adverse land use decision, as was the situation in *King*, we question the wisdom of requiring that same applicant to exhaust one type of *judicial* remedy as a prerequisite to pursuing another type of *judicial* remedy. To the extent that it may be sound policy to require a *land use applicant* to attempt to overturn an adverse final land use decision by means of a writ of review before suing a municipality

proceeding as just another "administrative" remedy. We disagree with that characterization.

Generally, actions by an agency cannot be challenged in court until administrative avenues of appeal are exhausted. *Beard v. King County,* 76 Wn. App. 863, 870, 889 P.2d 501 (1995). Exhaustion of administrative remedies is required when (1) a claim is cognizable in the first instance by an agency alone, (2) the agency's authority establishes clearly defined machinery for the submission, evaluation, and resolution of complaints by aggrieved parties, and (3) the relief sought can be obtained by resort to an exclusive or adequate administrative remedy. *Beard,* 76 Wn. App. at 870 (citing *State v. Tacoma-Pierce County Multiple Listing Serv.,* 95 Wn.2d 280, 284, 622 P.2d 1190 (1980) (quoting *Retail Store Employees Union Local 1001 v. Washington Surveying & Rating Bureau,* 87 Wn.2d 887, 558 P.2d 215 (1976)). The doctrine is founded on the principle that the judiciary should give proper deference to that body possessing expertise in areas outside the conventional experience of judges, so that the administrative process will not be interrupted prematurely, so that the agency can develop the necessary factual background on which to reach its decision, so that the agency will have the opportunity to exercise its expertise and to correct its own

in tort for damages caused by the adverse final decision, we decline to extend the requirement to neighboring property owners who may have claims sounding in tort, nuisance or inverse condemnation based on the action or inaction of a municipality or of a developer of neighboring property or both. Although Phillips discovered that the spreaders had been installed in the county right-of-way and that he was having some water problems before final plat approval, a less alert neighboring property owner may not have discovered the problem until a number of rainy seasons had passed. It would not be sound policy to require neighboring property owners to seek writs of review within the short time span allowed for that particular type of judicial remedy as a prerequisite to seeking recovery for tort, nuisance or inverse condemnation damages caused by storm water runoff. Such a requirement would effectively shorten the statute of limitation for negligence actions to the much shorter deadlines required for writs of review, in that failure to seek the writ would defeat all negligence claims altogether based on an inability to show legal causation. *Cf. Hayes v. City of Seattle,* 76 Wn. App. 877, 880, 888 P.2d 1227 (1995) (rejecting contention that writ applicant in land use case was required by doctrine of res judicata to bring § 1983 civil rights claim at same time as writ action; such a requirement would effectively reduce three year statute of limitation to 30 days), *aff'd,* 131 Wn.2d 706 (1997).

errors, and so as not to encourage individuals to ignore administrative procedures by resorting to the courts prematurely. *South Hollywood Hills Citizens Ass'n,* 101 Wn.2d at 73-74 (citing *Retail Store Employees,* 87 Wn.2d at 906 and *McKart v. United States,* 395 U.S. 185, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)).

■ ■ We must decide whether, once these aims have been met, i.e., once the administrative agency has made its final decision so that resort to the courts is appropriate, an aggrieved individual must first attempt to obtain reversal of the final administrative decision through the writ process before proceeding with any other type of judicial remedy, e.g., a negligence claim, a nuisance or trespass claim, or a taking claim. In the absence of any persuasive contrary authority cited by either respondent to this appeal with respect to the tort claims, and in light of direct contrary authority with respect to the inverse condemnation claim cited above, we hold that an individual such as Phillips, who was not the land use applicant before the administrative body, need not do so.

Accordingly, we turn to the question of the viability of the causes of action for negligence, trespass, inverse condemnation and improper elimination of access.[4]

2. Claim for Negligent Dispersal of Storm Waters.

We first observe that the only ground upon which Lozier Homes, Inc., sought dismissal of the first cause of action below was the ground of exhaustion of remedies; that is also the only ground Lozier Homes, Inc., argues on appeal, with respect to the negligence claim. Having disapproved that ground, we reverse the trial court's dismissal of the negligence action, as against Lozier Homes, Inc.,

---

[4]Although the complaint contains an additional claim of appropriation of a private ditch or way, we find this claim to be indistinguishable from the private inverse condemnation claim. Apparently, Phillips agrees, as he does not devote a separate section of his opening brief to this cause of action, but rather discusses it with the inverse condemnation claim. Accordingly, we will not discuss this claim separately from our discussion of the inverse condemnation claim.

and reinstate the first cause of action with respect to Lozier Homes, Inc.

■ As for the negligence claim against the County, for the first time on appeal Phillips characterizes the first cause of action as one for intentional tort. Appellant's Opening Br. at 17. *But see State v. Murphy*, 35 Wn. App. 658, 668, 669 P.2d 891 (1983), *review denied*, 100 Wn.2d 1034 (1984) (unless an issue is of constitutional magnitude, an issue, theory, or argument not presented to the trial court will not be considered for the first time on appeal) (citing *Herberg v. Swartz*, 89 Wn.2d 916, 925, 578 P.2d 17 (1978); *State v. Jamison*, 25 Wn. App. 68, 75, 604 P.2d 1017 (1979), *aff'd*, 94 Wn.2d 663 (1980)). Accordingly, we will not address the intentional tort theory, but will analyze the negligence claim that was presented to the trial court.

■ A negligence claim cannot be sustained unless there is a duty of care running from the defendant to the plaintiff. *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988). Where the defendant is a governmental entity, the public duty doctrine requires the plaintiff to show that the government owed a duty to the plaintiff individually as opposed to the public in general. *Id.* In general, a local government's duties regarding enforcement of land use regulations is owed to the public at large. *Taylor v. Stevens County*, 111 Wn.2d 159, 164, 759 P.2d 447 (1988). However, a duty to a specific individual, and thus an exception to the public duty doctrine, is recognized in four circumstances: (1) where the Legislature enacts legislation for the protection of persons of the plaintiff's class, (2) where the governmental body fails to enforce statutes or regulations, (3) where a special relationship exists between the plaintiff and the governmental body, and (4) where the governmental body undertakes to rescue the plaintiff. *Honcoop*, 111 Wn.2d at 188-91; *Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 532-35, 871 P.2d 601, *review denied*, 124 Wn.2d 1029 (1994).

■ Phillips does not claim that any of these exceptions apply. Instead, Phillips argues that the public duty doc-

trine does not apply in this case because here, the County was an affirmative participant in the drainage project. Phillips fails to demonstrate, however, that "actively participating" in a challenged action is a fifth exception to the public duty doctrine.

 Even if it were true that a municipality could be held liable for approving a drainage system by becoming "actively" or "affirmatively" involved in its development, Phillips fails to show sufficient active involvement in this case on the part of King County. Although it is true that the spreaders were placed on the county right-of-way with the consent of the county, and although it is true that the county now owns and maintains the system, during the period of time that the injury to Phillips could have been prevented, the County essentially did nothing more than approve the alternative drainage plan after finding that it complied with the applicable regulations. We hold that the fact that the spreaders were placed on county property and that the entire drainage system was dedicated to the County does not remove the negligence claim from the public duty doctrine. Phillips's first cause of action against the County was properly dismissed.

3. Claims for Inverse Condemnation and Trespass.

 A. Claim Against the County. Phillips contends that it was error to dismiss the cause of action for inverse condemnation. The injurious flow of water upon a person's land will support an inverse condemnation action in the proper case. *Hoover v. Pierce County*, 79 Wn. App. 427, 432, 903 P.2d 464 (1995), *review denied*, 129 Wn.2d 1007 (1996) (citing *B&W Constr., Inc. v. City of Lacey*, 19 Wn. App. 220, 223, 577 P.2d 583 (1978)). In order to state a prima facie cause of action for inverse condemnation due to the injurious flow of surface waters, the plaintiff must demonstrate that the municipality collected surface water by artificial means, channeled the water, and deposited it on private property, thereby causing permanent or recurring damage to the property. *Hoover*, 79 Wn. App. at 432

(citing *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 874-75, 523 P.2d 186 (1974); *Burton v. Douglas County*, 14 Wn. App. 151, 156, 539 P.2d 97, *review denied*, 86 Wn.2d 1007 (1975)). The flow of surface water along natural drains may be hastened or incidentally increased by artificial means, so long as the water is not ultimately diverted from its natural flow onto the property of another. *Wilber*, 83 Wn.2d at 875. The County cannot be held liable unless the drainage system it now owns "artificially collect[s] and discharge[s] [water] upon adjoining lands in quantities greater than or in a manner different from the natural flow thereof." *Id.* (citing *Colella v. King* County, 72 Wn.2d 386, 433 P.2d 154 (1967); *King County v. Boeing Co.*, 62 Wn.2d 545, 384 P.2d 122 (1963)). The mere fact that the amount of water reaching a plaintiff's land may be greater than it formerly was will not entitle plaintiff to any compensation unless he or she can also demonstrate a change in the manner of the water's flow. *Wilber*, 83 Wn.2d at 876.

Here, the evidence shows that the surface water from the entire Autumn Wind development is artificially channeled, first into a man-made detention pond which regularly overflows when there is any significant amount of rainfall; from there, the overflowing waters are artificially channeled to the spreader system located in the county right-of-way immediately adjacent to the Phillips property. Because the soil in that area is too impervious to allow for percolation of any significant amount of water into the soil, the spreaders serve no useful function; the storm waters overflowing from the detention pond pour directly, in a body, onto the Phillips land, in amounts more than double the pre-development volume, and at a velocity more than five times the pre-development rate. Phillips's expert, the hydrologist Keith Leytham, deemed this to be a great increase in volume and rate. Clerk's Papers at 335-36.

Viewing this evidence in the light most favorable to Phillips, as must be done at the summary judgment stage,

we conclude that a rational trier of fact could determine that Phillips is receiving much more of the Autumn Wind surface water than would be expected from the mere fact of removal of trees and foliage and the paving of streets, i.e., could conclude that if the surface water were not artificially diverted first into the detention pond and from there to the spreader system immediately adjacent to the Phillips property, some of it would percolate, some of it would evaporate, some of it would reach the property of other neighboring landowners, and less of it would reach the Phillips property than is now the case.

But in *Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. at 530-31, a panel of this court disapproved an inverse condemnation claim against King County on facts similar to the facts in this case, holding that the fact that a county regulates development and requires compliance with road and drainage restrictions does not transform a private development into a public project. 73 Wn. App. at 531. In *Pepper*, as in this case, the County accepted the road and drainage systems for County maintenance, upon final plat approval. 73 Wn. App. at 528.[5]

The *Pepper* court relied upon *Rains v. Department of Fisheries*, 89 Wn.2d 740, 575 P.2d 1057 (1978) and *Maple Leaf Investors, Inc., v. Department of Ecology*, 88 Wn.2d 726, 565 P.2d 1162 (1977); neither of those cases involved the pouring of storm waters upon private property.[6] The *Pepper* court did not cite *Wilber Dev. Corp.*, 83 Wn.2d 871,

---

[5]The County states in its brief for this appeal that this is commonly done, citing King County Code §§ 9.04.050 and 9.04.110. Br. of Resp't King County at 26 n.7. *See also* King County Code § 19.28.050(C), entitled "Qualifications governing approval of plat," referring to streets, storm drainage, sanitary sewer and water systems as "proposed *public facilities*" (emphasis added).

[6]In *Rains*, the plaintiff's property flooded after the Department of Fisheries denied him a permit to relocate a stream bed for purposes of flood control. The *Rains* court described the difference between a governmental taking of private property and the regulation of use of that property for the public welfare. 89 Wn.2d at 745. Finding no governmental enterprise the value of which was enhanced by the State's action, and no physical invasion of the plaintiff's property, the Supreme Court affirmed the trial court's dismissal of the inverse condemnation claim on summary judgment. 89 Wn.2d at 746-47. In *Maple Leaf Investors*, the Department of Ecology denied the plaintiff a permit to build

in which the Supreme Court reversed a summary judgment dismissing an inverse condemnation claim against the Town of Steilacoom and Pierce County; those municipalities had approved plans for storm drainage facilities to be constructed by land developers in conjunction with subdivision plats of land lying adjacent to the land of the plaintiff. The *Wilber* court said:

> A municipality ordinarily is not liable for consequential damages occurring when it increases the flow of surface water onto an owner's property if the damages arise wholly from changes in the character of the surface produced by the opening of streets, building of houses, and the like, in the ordinary and regular course of the expansion of the municipality. On the other hand, it is liable if, in the course of an authorized construction, it collects surface water by an artificial channel or in large quantities and pours it, in a body, upon the land of a private person, to his injury. Under this rule, while municipal authorities may pave and grade streets and are not ordinarily liable for an increase in surface water naturally falling on the land of a private owner where the work is properly done, they are not permitted to concentrate and gather such water into artificial drains or channels and throw it on the land of an individual owner in such manner and volume as to cause substantial injury to such land and without making adequate provision for its proper outflow, unless compensation is made.

83 Wn.2d at 874-75 (citations omitted).

Although the *Wilber* court did not directly hold that a municipality by the mere approval of a private developer's drainage plan accomplishes a constitutional taking, such a holding would appear to be implicit in the ruling. Moreover, here, there is more than mere county approval. The record reflects that the County assumed ownership, maintenance and control of the Autumn Wind drainage system,

---

single-family homes within a flood control zone. The flood control zone was in effect when the plaintiff purchased the property. Rejecting the contention that the state action was akin to acquiring a flowage easement over plaintiff's property, the Supreme Court ruled that there had been no governmental taking, but merely a valid exercise of police power. 88 Wn.2d at 733-34.

after construction was completed, so that the system is now a public facility in every sense of that term.[7]

It is our task to determine whether the *Pepper* court's inverse condemnation ruling can be reconciled with *Wilber*, or whether we must disapprove the *Pepper* court's inverse condemnation ruling to the extent that it is inconsistent with the underlying premise of *Wilber*.

In *Conger v. Pierce County*, 116 Wash. 27, 35, 198 P. 377, 18 A.L.R. 393 (1921) our Supreme Court said: "The state itself cannot take or damage private property for a public use, without compensating the owner; *nor can it authorize a taking or damaging which is prohibited to it.*" (Emphasis added). It would seem an anomaly if a municipality, which could not build its own storm drainage system thereby pouring water upon the land of a private individual without compensating that individual, could authorize a developer to build that same system, then take over the ownership, maintenance and control of that system, and escape responsibility to compensate the injured party. The State Constitution provides that private property may not be taken *or damaged* for public *or private* use without compensation being first made. WASH. CONST. art 1, § 16.

The *Conger* court explained that the only ways known to the law that private property can be taken or damaged by the public are by the principles of eminent domain or those of the police power. Police power is exercised for the benefit of the public health, peace and welfare. Regulating and restricting the use of private property in the interest of the public is its chief business. It does not authorize the taking or damaging of private property in the constitutional sense. "Eminent domain takes private property for

---

[7]We observe that in *Wilber*, although the only act by the County mentioned in the opinion is its approval of plans for the storm drainage facility, after construction was completed the Town of Steilacoom controlled the flow of waters from the swamp on the plaintiff's land through a natural watercourse leading to Puget Sound. It was the allegedly limited capacity of this watercourse that concerned the plaintiff's expert engineer, who stated in his affidavit that the watercourse did not have sufficient capacity to drain the plaintiff's land of the excess water resulting from the development. *Wilber*, 83 Wn.2d at 872-73.

a public use, while the polic[e] power regulates its use and enjoyment, or if it takes or damages it, it is not a taking or damaging for the public use, but to conserve the safety, morals, health and general welfare of the public." *Conger*, 116 Wash. at 35-36. Quoting LEWIS ON EMINENT DOMAIN § 6, the *Conger* court explained further:

> "Everyone is bound so to use his own property as not to interfere with the reasonable use and enjoyment by others of their property. For a violation of this duty the law provides a civil remedy. Besides this obligation, which every property owner is under to the owners of neighboring property, he is also bound so to use and enjoy his own as not to interfere with the general welfare of the community in which he lives. It is the enforcement of this last duty which pertains to the police power of the state so far as the exercise of that power affects private property. Whatever restraints the legislature imposes upon the use and enjoyment of property within the reason and principle of this duty, the owner must submit to, and for any inconvenience or loss which he sustains thereby, he is without remedy. It is a regulation, and not a taking, an exercise of police power, and not of eminent domain. But the moment the legislature passes beyond mere regulation, and attempts to deprive the individual of his property, or of some substantial interest therein, under the pretense of regulation, then the act becomes one of eminent domain, and is subject to the obligations and limitations which attend an exercise of that power."

*Conger*, 116 Wash. at 36-37 (quoting JOHN LEWIS, LAW OF EMINENT DOMAIN § 6 (2d ed. 1900).

Thus, in *Conger*, Pierce County was potentially liable on a theory of inverse condemnation, depending upon resolution of factual issues, for flood damage to the plaintiff's property resulting from a flood control project intended to protect and preserve county roads and bridges, 116 Wash. at 43, but the government was not liable for flood damages to the property of the plaintiff in *Rains* for exercising its police power to preserve fish habitat by denying the plaintiff a permit to realign a stream on the plaintiff's property, 89 Wn.2d at 747. Neither was the government liable to the plaintiff in *Maple Leaf Investors*, 88 Wn.2d at

733, for exercising its police power to deny a permit to build houses within the confines of a flood control zone.

■ Here, the County certainly exercised its police power in allowing Lozier Homes to build a drainage system that complied with the 1979 code and regulations applicable to the Autumn Wind plat. We have held that the county cannot be found liable to Phillips in negligence for the exercise of its police power, even though, according to evidence in the record, the drainage system approved was known by engineers to be outdated, inadequate and likely to cause flooding on neighboring properties. But the County exercised its police power with respect to Autumn Wind property, and not with respect to Phillips' property. We find that to be a crucial distinction—in both *Rains* and *Maple Leaf Investors* the government exercised its police power to regulate the use of the plaintiffs' land, not the land of a neighboring property owner. In neither *Rains* nor *Maple Leaf Investors* was there any physical invasion of the plaintiffs' land by virtue of any facility built or approved and subsequently owned by the government—a fact found to be significant by the Supreme Court. *See Rains*, 89 Wn.2d at 746; *Maple Leaf Investors*, 88 Wn.2d at 733.

We conclude that here, by exercising its police power to regulate the use of the Autumn Wind development, the County effectively appropriated, initially for the benefit of Autumn Wind, a flowage easement over Phillips's property; the county subsequently assumed ownership, maintenance and control of the drainage system and thus appropriated the flowage easement to public use. This conclusion is consistent with the Supreme Court's opinion in *Wilber*, albeit inconsistent with this court's inverse condemnation ruling in *Pepper*. This conclusion is consistent with the determination by Division Two of this court in the recent case of *Hoover v. Pierce County*, 79 Wn. App. 427, 903 P.2d 464 (1995), *review denied*, 129 Wn.2d 1007 (1996). There, in 1925, the residents of Horsehead Bay, west of Gig Harbor, petitioned Pierce County to construct

a road accessing their properties. The county completed the road in 1928. The plaintiffs purchased their property in 1956. In 1972 the county constructed a culvert near plaintiffs' property to allow storm waters to flow under the roadway. In late 1990 and early 1991, two 25-year rainstorms caused flooding on plaintiffs' land. Their engineering expert testified that the road acted as an artificial channel for storm waters flowing from a 12-acre drainage area, and that the culvert directed the flow of water onto the plaintiffs' property because the culvert could not handle runoff from the 12 acres during 25-year storms. Citing *Wilber*, the *Hoover* court concluded that a constitutional taking had occurred, 79 Wn. App. at 432-33, albeit in 1928, before the plaintiffs' purchased their property, so that the purchase price should have reflected the diminished value of their land due to periodic flooding.

Our conclusion is also consistent with *Buxel v. King County*, 60 Wn.2d 404, 374 P.2d 250 (1962). There, to alleviate the drainage problem of certain property owners on the east side of Des Moines Way, the county placed a culvert beneath Des Moines way. The culvert caused storm water draining from the east side of the road to join with water from the west side of the road. The plaintiff had had some minor problems with seepage from the west, but with the new culvert her minor seepage problem became an inundation problem. She sued the county for trespass by water and inverse condemnation. The trial court found in her favor and the Supreme Court affirmed, quoting 18 EUGENE MCQUILLIN, MUNICIPAL CORPORATIONS § 53.133 at 556-58 (3rd ed. 1959):

"It is an exception to the general rule of nonliability, in that a municipality is liable if, in the course of an authorized construction, it collects surface water by an artificial channel, or in large quantities, and pours it, in a body, upon the land of a private person, to his injury. Under this rule, while municipal authorities may pave and grade streets and are not ordinarily liable for an increase in surface water naturally falling on the land of a private owner where the work is properly done, they are not permitted to concentrate and

gather such water into artificial drains or channels and throw it on the land of an individual owner in such manner and volume as to cause substantial injury to such land and without making adequate provision for its proper outflow, unless compensation is made, and for breach of duty in this respect an action will lie."

*Buxel*, 60 Wn.2d at 409. This is, of course, the same ruling as in *Wilber*, except that in *Buxel* the county actually built the culvert, whereas in *Wilber* the county only approved its construction by a private developer. Here, as we have observed more than once, the county not only approved the drainage system but also assumed its ownership, maintenance and control.

Because we believe that this court's inverse condemnation ruling in *Pepper* is inconsistent with the Supreme Court's inverse condemnation rulings in *Wilber* and *Buxel*, we decline to follow *Pepper*. Accordingly, we reinstate Phillips' inverse condemnation claim against the county.

 We also reinstate the trespass claim as against the county. The elements of an action in trespass, which includes trespass by water, *Hedlund v. White*, 67 Wn. App. 409, 418 n.12, 836 P.2d 250 (1992) (citing *Buxel*, 60 Wn.2d at 409), are the intentional or negligent intrusion onto or into the property of another by the defendant. *Mielke v. Yellowstone Pipeline Co.*, 73 Wn. App. 621, 624, 870 P.2d 1005, *review denied*, 124 Wn.2d 1030 (1994) (citing RESTATEMENT (SECOND) OF TORTS §§ 158, 159, 166 (1965)). A constitutional taking requires a permanent or recurring invasion, whereas a claim of trespass does not. *Hoover*, 79 Wn. App. at 431-32 (citing *Miotke v. City of Spokane*, 101 Wn.2d 307, 334, 678 P.2d 803 (1984) (citing, in turn, *Olson v. King County*, 71 Wn.2d 279, 284, 428 P.2d 562, 24 A.L.R.3d 950 (1967))). To the extent that Phillips may be unable to establish inverse condemnation at trial, he may wish to pursue the trespass claim.

 B. Claim Against Lozier Homes. Phillips argues that he has a private inverse condemnation claim against

Lozier Homes, as well as against the county. Although Phillips is correct that Article 1, Section 16 of our state constitution allows private condemnation of private ways of necessity for drains, flumes or ditches across the land of others upon the payment of just compensation, and that the Legislature has implemented the constitutional provision by setting up procedures for the exercise of the right, *see* RCW 8.24.010 and RCW 85.28.010, and that Lozier Homes failed to avail itself of those procedures, Phillips cites no case law authorizing an action for private inverse condemnation. Because we believe that existing causes of action for negligence, nuisance and trespass adequately protect property owners such as Phillips, we decline the invitation to extend the case law governing inverse condemnation against the government to claims of private inverse condemnation, at this particular time.[8] We observe that King County took over the ownership, maintenance and control of the drainage system immediately upon final plat approval, so that the injury inflicted while Lozier Homes still owned the system was fleeting in nature, in any event. The same reasoning applies to the trespass claim against Lozier Homes. The County now owns the system; injunctive relief, if the trial court finds it to be appropriate, can be effective only as against the County, at this point in time, since the County now owns and operates the drainage system. Accordingly, we affirm the trial court's dismissal of the trespass and inverse condemnation claims, as against Lozier Homes, Inc.

4. Elimination of Access Claim.

Phillips next contends that it was error to dismiss the

---

[8]The *Pepper* court disapproved the private inverse condemnation claim in that case on different grounds. There, the plaintiff brought the claim under 42 U.S.C. § 1983, alleging state action. The *Pepper* court found an insufficient nexus, and noted that it was undisputed, in that case, that private individuals do not have the power of eminent domain. 79 Wn. App. at 537. Thus, the plaintiff in *Pepper* seemingly neglected to point out that private individuals can, indeed, take private property for drainage purposes, upon paying just compensation. WASH. CONST. art. I, § 16; RCW 8.24.010; RCW 85.28.010.

claim for elimination of access. Count Three of the complaint alleged that the County and Lozier, in allowing and constructing the drainage facility in the 236th Avenue right-of-way, effectively eliminated the plaintiff's access to his property from 236th Avenue. Phillips does not currently access his property via 236th; instead, he uses a road on the opposite side of the property. Neither has Phillips sought to develop the property, as yet.

Landowners asserting that governmental action has eliminated their ability to use their property must first apply for the necessary permits in order to make their case ripe for decision. *See Presbytery of Seattle v. King County*, 114 Wn.2d 320, 339, 787 P.2d 907, *cert. denied*, 498 U.S. 911 (1990) (dismissing as not ripe the claim of a landowner who failed to seek permits before challenging regulatory action); *Estate of Friedman v. Pierce County*, 112 Wn.2d 68, 80, 768 P.2d 462 (1989) (affirming dismissal of action for failure to pursue administrative remedy). In the *Presbytery* case, the appellants' claims were held properly dismissed for failure to exhaust administrative remedies where the appellants never sought a development permit for the property that they claimed was damaged by the passing of an ordinance forbidding new construction. *Presbytery*, 114 Wn.2d at 339. The *Presbytery* court noted that until the appellants in that case applied for the necessary permits, it was impossible to know the effect the regulations had on the property in question. *Id.* Here, until Phillips seeks to develop the property, it will be impossible to determine whether, in fact, the spreaders prevent access as alleged in the record.[9] Therefore, the claim is not ripe for decision and was properly dismissed.

## SUMMARY

In conclusion, we reverse the trial court's dismissal of

---

[9]In order to perform any work in the right-of-way, Phillips must apply for and obtain a permit. King County Code 14.28.020, 14.28.080.

the negligence claim as against Lozier Homes, Inc., reverse the dismissal of the inverse condemnation and trespass claims as against the County, and affirm the remainder of the trial court's ruling on summary judgment.

MOYNIHAN, J. Pro Tem., concurs.

Cox, J. (concurring in part and dissenting in part) — I concur with the majority to the extent it reverses the dismissal of Phillips' negligence claim against Lozier and affirms dismissal of most other claims against Lozier and the County. I respectfully dissent from the conclusion that we should reverse the dismissal of the inverse condemnation and trespass claims against the County.

The majority sees a conflict between *Wilber*[10] and *Pepper*[11] and concludes that the former case requires that we reinstate the inverse condemnation claim against the County. I believe it is unnecessary to reach the question of whether there is a conflict between the two cases. Because there is no genuine issue of material fact demonstrated on the record before us, and *Wilber* supports summary dismissal of the inverse condemnation claim, we should affirm.

In *Wilber*, the city and county sought summary dismissal of the inverse condemnation action brought by the landowner whose property was located near a platted subdivision.[12] Surface water from the subdivision drained naturally into a swamp on the landowner's property. A natural watercourse, which was controlled by the city, flowed out of the swamp to Puget Sound. The city maintained the level of the swamp as it was prior to the platting and construction of the subdivision by controlling the

---

[10]*Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 523 P.2d 186 (1974).

[11]*Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 871 P.2d 601, *review denied*, 124 Wn.2d 1029 (1994).

[12]83 Wn.2d at 872.

flow through the watercouse. The landowner's theory of the case was that the approvals by the city and county of the plat of the subdivision caused the construction that increased the amount and manner of flow of water reaching the property.

The Court noted that "the mere fact that the *amount* of water reaching [the owner's] land, by reason of the development of the platted lands, might be greater than it formerly was, would not entitle it to compensation for any resulting damage."[13] However, the Court went on to hold that if the water "is collected and deposited upon the land in a different *manner*," damages would be recoverable.[14] The Court concluded that there was a genuine issue of material fact whether the manner of flow of water had changed, noting that would be difficult to prove. On the basis of the existence of that factual dispute, the Court reversed the trial court's summary dismissal of the claim.

Here, the factual question is whether the *manner* of flow of water to Phillips' property has changed as a result of the actions of the County. Notwithstanding Phillips' assertion to the contrary, it is clear from *Wilber* that any increase in the amount of water flowing from the platted area to Phillips' property is not actionable.[15]

As I understand Phillips' argument, it focuses on the spreaders installed in the County right of way as the source of the problem concerning the manner of flow to the property. To the extent that is the point, it is misplaced. In discussing the modeling he did to provide a basis for his opinion, Mr. Keith Leytham, the expert for Phillips, clearly stated that the spreaders do nothing with respect to the flow of water to Phillips' property.[16] Thus, there is no genuine issue of material fact that the *manner*

---

[13] *Wilber*, 83 Wn.2d at 876 (emphasis added).

[14] (Emphasis added).

[15] *Id.* Phillips' statement in the reply brief is inconsistent to the extent that it equates the *manner* of flow of water with the *amount* of flow of water. Appellants' Reply Br. at 3.

[16] The County's counsel examined the expert at deposition as follows:

of the flow of water to Phillips' property has not been affected by the spreaders installed in the County right of way. Moreover, on the basis of *Wilber*, absent any change in the manner of the flow, the County is entitled to judgment as a matter of law. Summary judgment on the inverse condemnation claim is proper.

The majority also reverses the dismissal of the trespass claim. I differ with that conclusion on two bases.

First, Phillips' opening brief does not appear to address a trespass claim at all. The reply brief asserts the issue was raised in the opening brief.

We do not generally address issues that are first raised in reply briefs.[17] It does not appear to me that the opening brief truly addresses trespass. Second, even if the opening brief does address the issue, it addresses it in the context of inverse condemnation. I do not believe there is any merit in the inverse condemnation claim. The trespass claim does not appear to be any more valid. I would therefore affirm the trial court's dismissal of that claim as well.

Review granted at 134 Wn.2d 1019 (1998).

---

"Q. So is it fair to say, then, that the opinion that you gave and the result that you reached with the modeling would have been the same if the spreaders had not been there?

[17]*See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).