[No. 29696-5-I. Division One. February 16, 1993.]

ARTHUR E. PIERCE, ET AL, *Appellants,* v. NORTHEAST
LAKE WASHINGTON SEWER AND WATER
DISTRICT, *Respondent.*

*Roger M. Leed* and *Roger M. Leed P.S.,* for appellants.

*Peter A. Deming* and *Inslee, Best, Doezie & Ryder P.S.,* for respondent.

SCHOLFIELD, J. — Arthur and Patricia Pierce brought an action for nuisance, trespass, negligence and inverse condemnation against defendant Northeast Lake Washington Sewer and Water District (District), based on the District's construction and maintenance of a water storage tank adjacent to their property. The trial court found that the Pierces had demonstrated no compensable damage to a property right that would entitle them to compensation, and granted summary judgment in favor of the District. The Pierces now appeal. We affirm.

FACTS

The dispute in this case centers on the District's construction and maintenance of a water tank reservoir on property it owns adjacent to that owned by the Pierces. The Pierces' home, located in Lake Forest Park, sits atop a hillside which slopes steeply downward and across the District's property. The Pierces built their home in 1967, and chose their home site because of its extraordinary natural beauty and the view to the north and east over Lake Washington, the Cascade Mountains, and Mount Rainier.

The District purchased its property in 1984 after reviewing several potential sites on which to build a reservoir. It selected the 5.4-acre site in part due to the sloping hillside which would obscure the majority of the reservoir and minimize the effect on neighboring residences. Under applicable zoning regulations, water storage reservoirs and tanks were permissible with a conditional use permit. The District submitted an application for a conditional use permit in November 1984. The Pierces participated in the hearing process and voiced their objections to the project. Despite an initial denial by the zoning adjuster, the District was ultimately granted a conditional use permit in August 1985 for the construction of a 4.3-million-gallon water storage tank. Construction of the tank was completed in December 1987. The tank is 160 feet in diameter and 30 feet high. It is located 50 feet from the Pierces' home.

In September 1989, the Pierces brought this action against the District for nuisance, trespass, negligence, and inverse condemnation. In part, the Pierces alleged damages for the loss of property value caused by construction of the tank, including impairment of their view and adverse impact on the preexisting character of their property. By order dated November 1, 1991, the trial court entered summary judgment in the District's favor, dismissing the Pierces' claims. This appeal involves only the Pierces' inverse condemnation claim.

■ In evaluating a summary judgment, this court makes the same inquiry as the trial court. *Touchet Vly. Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 341, 831 P.2d 724 (1992). All of the facts and reasonable inferences from them must be viewed in a light most favorable to the nonmoving party. *Eriks v. Denver*, 118 Wn.2d 451, 456, 824 P.2d 1207 (1992). A motion for summary judgment should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Harris v. Harris*, 60 Wn. App. 389, 392, 804 P.2d 1277, *review denied*, 116 Wn.2d 1025 (1991).

### INVERSE CONDEMNATION

■ An action for inverse condemnation is one brought to recover just compensation for property that has been taken in fact, but without formal court proceedings.[1] *State v. Lakeside Indus.*, 66 Wn. App. 715, 725, 834 P.2d 631 (1992). A party alleging inverse condemnation must establish the following elements: (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings. *Rains v. Department of Fisheries*, 89 Wn.2d 740, 748, 575 P.2d 1057 (1978) (Wright, C.J., dissenting).

In this case, the Pierces claim their right to the unrestricted use and enjoyment of their property has been curtailed by the District's construction of the tank. They assert they are entitled to compensation on a showing that the tank has caused an interference or reduction in the enjoyment of their property. The Pierces allege that the market value of their property has decreased at least $30,000[2] due

---

[1] Const. art. 1, § 16 states in part that "[n]o private property shall be taken or damaged for public or private use without just compensation having been first made . . .".

[2] Evidence that the tank has caused a loss in value of the Pierce home and partially blocked the view from it is not controverted by the District.

to the tank's construction, and that the impact to their property is unique. The Pierces claim that the tank has interfered with the comfortable enjoyment of their property.[3] They have made no allegation that the District's construction and maintenance of the tank is contrary to law, nor do they assert that the tank has interfered with easement or covenant rights.

In support of their claim, the Pierces rely on cases involving inverse condemnation claims due to excessive noise. *See Ackerman v. Port of Seattle*, 55 Wn.2d 400, 412, 348 P.2d 664, 77 A.L.R.2d 1344 (1960) (frequent low flights over the plaintiffs' land amounted to taking of air easement); *Martin v. Port of Seattle*, 64 Wn.2d 309, 313, 391 P.2d 540 (1964) (noise of jet aircraft taking off or landing can amount to a taking or damaging of property under Const. art. 1, § 16), *cert. denied*, 379 U.S. 989 (1965).

The *Martin* court held that just compensation must be paid for a taking or damaging of "property", and utilized the *Ackerman* definition of property as "the unrestricted right to use, enjoy, and dispose of . . . land." *Martin*, at 313. The Pierces argue that under *Martin*, compensation is required for any "damage" caused to private property by public bodies. We view this interpretation of *Martin* as too broad. The existence of excessive airplane noise was central to the result reached in *Martin*, and there is no issue of excessive noise in this case.

The Pierces claim that public buildings and structures can trigger the taking and damaging clause of the state constitution regardless of whether the undertaking is authorized or legal. In support of their argument the Pierces cite *Jacobs v. Seattle*, 93 Wash. 171, 176-77, 160 P. 299 (1916) and *Ferry v. Seattle*, 116 Wash. 648, 200 P. 336, 203 P. 40 (1921).

---

[3] In her declaration, Patricia Pierce states that the tank blocks the view from her home of the nearby wooded terrain, Lake Washington, Mt. Rainier and the Cascade Mountains. She asserts that the tank is visible from the living room, dining room, kitchen, and three of four bedrooms in her home. She claims that she and her family cannot enjoy their deck and swimming pool as much as before because the tank "literally looms over our house, . . .".

The court in *Jacobs* ruled that the plaintiffs, who owned property adjoining a lawfully operated city garbage incinerator, had a claim for inverse condemnation based on Const. art. 1, § 16.

> [I]t is clear that the erection and maintenance by a city of an incinerator for the burning of garbage on land adjacent to that of a private owner, and its operation so as to depreciate the value of his land *and render it a menace to the health of himself and family*, constitutes a damaging of private property for a public use, for which he would be entitled to compensation under the terms of Const., art. 1, § 16.

(Italics ours.) *Jacobs*, at 177. The plaintiffs in *Jacobs* based their claim in part on evidence that the garbage incinerator emitted noxious odors harmful to their health. *See Jacobs*, at 173. In this case, the Pierces make no allegation of similar harm from the water tank.

In *Ferry v. Seattle, supra*, the plaintiffs successfully enjoined the construction of a reservoir in Volunteer Park near their homes. *Ferry*, at 649, 661-62. Their claim was based in part on fear that the reservoir would break and cause damage to their homes. *Ferry*, at 662-63. In upholding the injunction, the court stated: "If this situation supports a reasonable expectation that disaster may happen, and such expectation leads to a depreciation in the value of adjoining properties, the structure will be considered a nuisance." *Ferry*, at 663. We do not view *Ferry* as controlling here because the Pierces make no claim that their home value has been decreased due to a reasonable fear of harm from the water tank.[4]

---

[4]The Pierces also rely on *Steele v. Queen City Broadcasting Co.*, 54 Wn.2d 402, 341 P.2d 499 (1959), a case where the plaintiffs brought suit to enjoin the construction of a television transmission station near their homes. The *Steele* court found that the tower constituted a nuisance, and further recognized that even where an act is not a nuisance because done with legislative authority, "it may nevertheless amount to a taking or damaging of private property for public use, for which compensation must be made." *Steele*, at 408.

The facts of *Steele* are not analogous to this case. *Steele* was a nuisance action (which the present case is not), and involved allegations of damage to plaintiffs' property that are not apparent here, such as loss of mortgage money, falling ice, concern over an airplane colliding with the tower, and disagreeable wind noise. *Steele*, at 407.

■ The water tank concededly blocks a portion of the view from the Pierces' home and is not aesthetically pleasing to them. There is uncontroverted evidence that the tank has diminished the value of the Pierce home by $30,000.[5] Nonetheless, the harm the Pierces complain of has generally been held noncompensable:

> [A]lthough the establishment of a cemetery, a fire engine house, *a water tower*, a jail, a hospital, or a school, or a playground therefor in a residential district may have an actual determinable effect on the market value of land in the neighborhood, reducing such value to a considerable degree, the owners of the property are not as a rule entitled to compensation.

(Italics ours.) 26 Am. Jur. 2d *Eminent Domain* § 163, at 835 (1966). *See also Aubol v. Tacoma*, 167 Wash. 442, 446-47, 9 P.2d 780 (1932) (constitutional guaranty that no private property shall be taken or damaged without just compensation does not authorize compensation for depreciation in market value of land caused by legal act); *Conger v. Pierce Cy.*, 116 Wash. 27, 42, 198 P. 377, 18 A.L.R. 393 (1921) (private property may be damaged and its value lessened because it is located close to some public building, such as jail or public hall, yet damage is purely incidental and not recoverable).

The District's construction of the tank was lawful, and there is no evidence that it has been operated so as to create a nuisance. The Pierces have presented no evidence that the tank is harmful to their health or otherwise offensive due to odors or noise. The lack of such evidence distinguishes this case from all others on which the Pierces rely, and justifies the dismissal of their inverse condemnation claim.

---

[5]Because the Pierces allege no easement of light, air or view over the District's property, they cannot recover damages attributable to view loss in an inverse condemnation action. *See Collinson v. John L. Scott, Inc.*, 55 Wn. App. 481, 487-88, 778 P.2d 534 (1989) (appellants had no common law nuisance action as they possessed no easement of light, air, or view and had no legal cause for complaint for interference therewith by lawful erection of building on respondents' property); *PUD 1 v. Kottsick*, 86 Wn.2d 388, 390, 545 P.2d 1 (1976) (anticipated interruption of appellants' view by proposed transmission line did not constitute taking requiring just compensation).

Judgment affirmed.

GROSSE and KENNEDY, JJ., concur.

Review granted at 121 Wn.2d 1028 (1993).